601 P.2d 69

**STATE of New Mexico,
Plaintiff-Appellee,**

v.

**Manuel MONTANO,
Defendant-Appellant.**

**Nos. 3809, 3810.**

Court of Appeals of New Mexico.

Aug. 14, 1979.

John B. Bigelow, Chief Public Defender, Santa Fe, Dennis Manzanares, Asst. Public Defender, Mark Shapiro, Asst. Appellate Defender, Albuquerque, for defendant-appellant.

Jeff Bingaman, Atty. Gen., Sammy Lawrence Pacheco, Janice M. Ahern, James F. Blackmer, Asst. Attys. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

WOOD, Chief. Judge.

In No. 3810, defendant was convicted of trafficking in heroin. In No. 3809, defendant was convicted of a variety of crimes. The two appeals are hereby consolidated. Issues listed in the docketing statements, but not briefed, were abandoned. *State v. Ortiz*, 90 N.M. 319, 563 P.2d 113 (Ct.App. 1977). One of the five issues briefed is an attack on the legal sufficiency of U.J.I. Crim. 16.00 which states the elements of larceny. This Court has no authority to review instructions approved by the Supreme Court. *State v. King*, 90 N.M. 377, 563 P.2d 1170 (Ct.App.1977); *State v. Scott*, 90 N.M. 256, 561 P.2d 1349 (Ct.App.1977). The four issues discussed involve: (1) venue; (2) competency; (3) severance; and (4) the meaning of "passing title" in § 66–3–505, N.M.S.A.1978.

*Venue*

In both cases, which were tried separately, defendant filed a motion that venue be changed to a county other than Bernalillo. The motions were supported by affidavit of counsel. The affidavit asserted that defendant could not get a fair trial in either Bernalillo or Sante Fe Counties because of "public excitement and/or local prejudices

. . . ." The asserted inability to obtain a fair trial was based on stories in newspapers and on television shows which referred to several of defendant's crimes, the "storefront" operation in No. 3809, defendant "walking away" from a medical center, and defendant being featured as the "Crimestopper of the Week."

The motion for a change of venue was denied in both cases; defendant asserts this was error in both cases. The venue question is not properly before us in No. 3809; no venue issue was raised in the docketing statement filed September 27, 1978. N.M. Crim.App. 205. Defendant obtained several extensions of time in which to file the brief-in-chief. Not until March 12, 1979, on the day the brief-in-chief was filed, did defendant seek permission to supplement the docketing statement in No. 3809 in order to add the venue question. The motion was properly denied because untimely. *State v. Jacobs*, 91 N.M. 445, 575 P.2d 954 (Ct.App. 1978).

However, on the merits, the trial court did not err in denying the change of venue motions. Defendant asserts that a change of venue was mandatory because of an absence of an evidentiary hearing on the motions. Section 38–3–3(A), N.M.S.A.1978; *State v. Turner*, 90 N.M. 79, 559 P.2d 1206 (Ct.App.1976). This contention disregards what transpired. The trial court denied the motion "at this point," stated that it was necessary to inquire of the prospective jurors concerning their knowledge of the publicity and determine whether "as a result of that exposure," the defendant could get a fair trial. The trial court reserved ruling on the motions until "the presentation of specific questions to the jury panel."

The answers of prospective jurors to questions on voir dire was evidence to be considered in deciding the venue motions. *State v. Sierra*, 90 N.M. 680, 568 P.2d 206 (Ct.App.1977). This answer evidence moved the venue question out of the mandatory provisions of § 38–3–3(A), supra, and into the discretionary provisions of § 38–3–5, N.M.S.A.1978. *State v. Lunn*, 88 N.M. 64, 537 P.2d 672 (Ct.App.1975). The answer

evidence was such that there was no abuse of discretion in denying the motions to change venue. *State v. Sierra*, supra.

*Competency*

■ Defendant asserts the trial court erred in its application of *State v. Noble*, 90 N.M. 360, 563 P.2d 1153 (1977) in deciding his competency. The competency issue arose prior to the amendment of Rule of Crim.Proc. 35(b), effective July 1, 1978; the amended rule is not applicable to this case.

The competency issue applies to three stages of the proceedings in No. 3809—pretrial, during trial and sentencing. The competency issue applies to two stages of the proceedings in No. 3810—pretrial and sentencing.

A competency hearing was held in December, 1977 after which the trial court ruled there was no reasonable doubt that defendant was competent to be tried. There is no claim that this ruling was erroneous. However, the trial court ordered that defendant "continue to be seen" and stated that a further hearing would be held.

Subsequently, defendant made an apparent suicide attempt while being held in the county jail. He was taken to a medical center, from which he escaped. The second pretrial competency hearing was delayed until defendant was captured.

The second pretrial competency hearing was held on February 8 and 9, 1978. At that hearing, there was evidence that defendant was competent, that he was a malingerer in that he made a conscious effort to produce the symptoms of schizophrenia and that the apparent suicide attempt in the county jail was part of defendant's plan to be taken for medical treatment in order to escape. However, there was conflicting evidence. Defendant relies on this conflicting evidence.

*State v. Noble*, supra, states that "the Court may decide that there is no reasonable doubt as to the defendant's competency to stand trial, in which case there is no question for a jury to decide. Such a determination is only subject to review for abuse of discretion."

Defendant claims that because the evidence of competency was conflicting, the trial court could not properly rule there was no reasonable doubt and, thus, the ruling was an abuse of discretion. This argument overlooks *State v. Lopez*, 91 N.M. 779, 581 P.2d 872 (1978). There was conflicting evidence in *Lopez*, supra; a psychiatrist testified that Lopez was a borderline competent and there was lay testimony of incompetency. This Court held the failure to submit competency to the jury was an abuse of discretion. The Supreme Court reversed, pointing out: 1. the appellate court only reviews the evidence to determine whether the trial court's "no reasonable doubt" ruling was an abuse of discretion; 2. that the appellate court cannot substitute its judgment for that of the trial court; and 3. the evidence is to be reviewed "in the light most favorable to the trial court's decision . . . ."

In this case the conflicting evidence could be properly viewed by the trial court as weak. The expert testimony concerning incompetency was that defendant met two of the three tests for competency stated in U.J.I.Crim. 41.01, but did not meet the third test, that of being able to assist in his own defense. This incompetency was because of a latent type schizophrenia. The latency was "sometimes referred to . . . as a borderline condition" brought on by a certain kind of stress. There was evidence that the defendant's stress involved having to go to court, having to be tried and being in jail. According to this expert, defendant's "anxiety rests on the possible outcome of going to the penitentiary." "'To the extent that he can, he [defendant] will attempt to remain in a "safe" environment.'" The expert opined that defendant "was becoming competent," but that his condition would worsen if jailed for any length of time.

From the above evidence, the expert evidence of competency and malingering, and the evidence that defendant cut himself while in jail in order to be transferred to a medical facility from which he escaped, the trial court concluded there was no reasona-

ble doubt as to competency. Applying *State v. Lopez*, supra, by viewing the evidence in the light most favorable to the trial court's decision, we cannot hold that the trial court abused its discretion in ruling there was no reasonable doubt as to competency at the second pretrial hearing.

Trial in No. 3810 was on February 20 and 21, 1978. No competency issue arose during this trial. Trial in No. 3809 began on February 21, 1978 and concluded on March 1, 1978. On February 27, 1978, defendant slashed his wrists in the courtroom. The trial court ordered another evaluation of defendant before proceeding further with the trial. An oral evaluation was received and the trial continued on February 28, 1978. Based on the evidence presented at a subsequent hearing, the trial court ruled there was no reasonable doubt as to defendant's competency on February 27, 1978. Defendant does not claim the trial court abused its discretion by so ruling.

No issue is raised as to defendant's competency to be sentenced. See *State v. Sena*, 92 N.M. 676, 594 P.2d 336 (Ct.App.1979).

*Severance*

■ This issue concerns the 65-count indictment in No. 3809. Several government agencies operated an undercover project in Albuquerque. This "storefront" operation purchased stolen property. Defendant was a regular customer from March 3, 1977 through July 7, 1977. A large number of defendant's transactions were either taped or videotaped. There is no claim on appeal that the evidence was insufficient to sustain the resulting convictions.

There was a pattern to most of the counts. For most of the victims there was a charge of burglary, either vehicular or residential, a charge of larceny based on items taken in the burglary, and a charge of disposing of stolen property which almost always involved the storefront operation. The 65-count indictment involved 23 separate victims. The prosecution was unable to locate 5 of the victims; this resulted in a nolle prosequi of 14 counts. Thus the severance issue involves 18 separate victims.

The indictment was filed September 29, 1977. Defendant's motion for severance was filed November 23, 1977 and was heard on February 10, 1978. At the time of the hearing, the trial court was concerned that if severance were granted, the six-month provision for commencing trial would be violated. See Rule of Crim.Proc. 37(b), for that, and other reasons, the motion for severance was denied. Defendant asserts this was error; we disagree.

No claim was made that the 65 counts were improperly joined. Rule of Crim.Proc. 10. The motion to sever was based on Rule of Crim.Proc. 34(a), which authorizes severance, in the discretion of the trial court, upon a showing of prejudice. *State v. Rondeau*, 89 N.M. 408, 553 P.2d 688 (1976). The appellate issue is whether the trial court abused its discretion in denying the motion to sever. *State v. Schifani*, 92 N.M. 127, 584 P.2d 174 (Ct.App.1978).

The motion, as filed, sought severance of all counts. Defendant did not seek an "all count" severance at the hearing; rather, defendant asked that the 65 counts be severed into three trials on the basis of the months in which the offenses were committed. The reasons urged for severance, and our answers, follow:

(a) Defendant wished to testify as to some counts, but not as to others. This does not provide a basis for severance. *State v. Blakley*, 90 N.M. 744, 568 P.2d 270 (Ct.App.1977). In addition, this contention ignores the prosecutor's offer not to cross-examine defendant "as to anything he does not testify to."

(b) The motion to sever contended that defendant might be prejudiced through the admission of evidence which fails to meet the "other crimes" test. We understand this to be a claim that trial on all the counts would be prejudicial because, in proving a particular count, evidence would be admitted which, under Evidence Rule 404(b), would be inadmissible in connection with some other count. If this was the contention in the trial court, our answer is that, on appeal, no attempt has been made to demonstrate a violation of Evidence Rule

404(b). The appellate claim is that trial of all counts necessarily involves a violation of Evidence Rule 403 which requires a balancing of the probative value of evidence against the danger of unfair prejudice. See *State v. Day*, 91 N.M. 570, 577 P.2d 878 (Ct.App.1978). We answer this contention under paragraph (e), infra.

(c) Because of the number of counts "the jury is going to be confused and confounded as to what it is we're actually talking about." The record shows to the contrary. The evidence was presented on the basis of specified victims on specified dates. After the nolle prosequi, 51 counts remained. The trial court directed a verdict in defendant's favor as to one count. Fifty counts were submitted to the jury. There were 43 guilty verdicts and 7 non-guilty verdicts. As to two of the victims, defendant was convicted of the vehicular burglary involved, but acquitted of the related larceny and "disposing" charges. There was an acquittal of the disposing charge involving another victim, and an acquittal of the larceny and disposing charges involving still another victim. This record does not show that the jury was confused, but that it carefully applied the evidence to both the offense and victim. See *State v. Schifani*, supra, and cases therein cited.

(d) Because the trial lasted for seven trial days and because defendant slashed his wrists in the courtroom, during the trial, the argument is that there is "a very serious question about whether the strain had precipitated a psychosis. This is a very serious and unusual type of prejudice . . . ." We assume that defendant is contending that if severance had been granted, the trial would not have lasted so long and defendant would not have slashed his writs. A seven-day trial on 50 counts cannot be considered a long trial. The medical evidence is that the courtroom wrist slashing was "motivated by extreme fear of being convicted and sentenced to the Penitentiary." If any prejudice resulted from the wrist slashing, the prejudice was based on defendant's conduct and not on the lack of severance.

(e) Defendant contended in the trial court that the "very number" of counts being tried was prejudicial. It is this "very number" on which defendant bases his Evidence Rule 403 argument on appeal. The argument is that the number of counts demonstrates prejudice and requires severance. *State v. McGill*, 89 N.M. 631, 556 P.2d 39 (Ct.App.1976) rejected a similar argument, pointing out that evidence as to certain charges was admissible on other charges and that the acquittals on certain charges was an indication that the jury had followed the evidence as to the different charges. Of importance in *McGill*, supra, and in this case, is that severance was a discretionary ruling, and the appellate issue is abuse of discretion. The admissibility of items of evidence on more than one charge and the jury's verdicts are not the only factors to be considered. The strength or quality of the evidence is another factor, a circumstance to be considered. See *State v. Brewer*, 56 N.M. 226, 242 P.2d 996 (1952). The strength and quality of the evidence on the various counts convinces us that defendant was not prejudiced by the failure to sever the 50 counts submitted to the jury.

*The Meaning of Passing Title*

■ Section 66–3–505, supra, states:

Any person who, with intent to procure or *pass title* to a vehicle or motor vehicle which he knows or has reason to believe has been stolen or unlawfully taken, receives, or transfers possession of the same from or to another . . . is guilty . . . ." (Our emphasis.)

Defendant was convicted of violating this statute. He does not challenge the sufficiency of the evidence which shows that defendant, knowing that a pickup was stolen, transferred possession of the pickup to a detective.

Nor does defendant challenge the sufficiency of the evidence to meet that part of the jury instruction which required proof that:

At the time he transferred possession of the vehicle, the Defendant intended to permanently transfer the vehicle to another person[.]

Section 66–3–505, supra, refers to an "intent to . . . pass title . . . ." The jury instruction did not expressly refer to such an intent; the instruction required an "intent to permanently transfer." Defendant asserts the statutory requirement of intent to pass title was not met by an instruction which required an intent to permanently transfer. On this basis, defendant contends the jury was not instructed on the elements of the offense and his conviction of violating § 66–3–505, supra, must be reversed. We disagree.

Defendant asserts that the thrust of the prosecution's case "was that Mr. Montano had no title to pass." " . . . Mr. Montano gave no title or keys and did not even indicate the truck was his." "Because Mr. Montano's alleged activity posed no threat to the wheels of traffic in documents of title, it did not meet the statutory definition . . . ."

Defendant would give "title" a restricted meaning. As used in § 66–3–505, supra, "title" has a broad meaning which includes the transfer of whatever title the transferor possesses.

The essence of what is now compiled as § 66–3–505, supra, was enacted by Laws 1953, ch. 138, § 90. This 1953 law was a comprehensive statute relating to motor vehicles; it contained nine articles. Article III dealt with registration and certificates of title. Article IV dealt with transfers of title and included a provision for assigning title by endorsement upon the certificate of title. Section 90 was not a part of either Article III or IV; Section 90 was a part of Article IX, entitled "SPECIAL ANTI-THEFT LAWS." Section 90 was compiled as § 64–9–5, N.M.S.A.1953. Section 64–9–5, supra, was repealed by Laws 1978, ch. 35, § 554. Laws 1978, ch. 35, § 92 re-enacted § 64–9–5, supra, as § 64–9–5, supra, was worded after an amendment in 1975.

The legislative history shows that § 66–3–505, supra, is a part of the anti-theft provisions of the Motor Vehicle Code and that "title" in § 66–3–505, supra, is not limited to the "certificate of title" or "transfer of title" referred to in other provisions of the code. Accordingly, we reject defendant's claim that § 66–3–505, supra, "was primarily concerned with establishing documentary safeguards of title and protecting their authenticity and use." The primary concern of the portion of § 66–3–505, supra, involved in this case, was to prevent the transfer of stolen vehicles.

"Title" to a vehicle may be transferred, or passed, even though there is a failure to comply with code provisions concerning the certificate of title. *Knotts v. Safeco Insurance Company of America*, 78 N.M. 395, 432 P.2d 106 (1967); see *Forsythe v. Central Mutual Insurance Co. of N. Y.*, 84 N.M. 461, 505 P.2d 56 (1973).

A thief does not have legal title to (or ownership of) the stolen vehicle, and neither does the purchaser from a thief. See *Bustin v. Craven*, 57 N.M. 724, 263 P.2d 392 (1953). Yet, § 66–3–505, supra, was intended to prevent such a transfer. What, then, does "title" mean? We note that the statute does not refer to legal title or legal ownership; all that is required is a title that may be passed.

In determining the meaning of "title," defendant urges us to apply its ordinary meaning. See *State v. Hernandez*, 89 N.M. 698, 556 P.2d 1174 (1976). We do so. A common meaning of title in Webster's Third New International Dictionary (1966) is "the union of all the elements constituting legal ownership and being divided in common law into possession, right of possession, and right of property . . . ." Defendant had neither right of possession nor right of property. The only aspect of "title" in defendant was possession.

In *Roberts v. Wentworth*, 59 Mass. (5 Cush.) 192 (1849), plaintiff was required to show that he had title to the property at the time of the trespass. The decision points out that "title" is a word of indefinite meaning, and states:

A party may have a title to property although he is not the absolute owner. If he has the actual or constructive possession of property or the right of possession, he has a title thereto, although an-

other party may be the owner. But if the plaintiff had not the possession, nor the right of possession, nor the right of property, he certainly could not maintain his action.

*Bell v. Dennis,* 43 N.M. 350, 93 P.2d 1003 (1939) is consistent with *Roberts v. Wentworth,* supra, when it refers to possession as a badge of ownership.

The "title" requirement of § 66–3–505, supra, may be met by proof that the defendant intended to pass whatever form of title that he had. Defendant had a form of title by his possession, he met the requirement of passing title by intentionally transferring possession of the pickup that he knew was stolen. This interpretation does not result in a redundancy. Defendant must have transferred possession. He must also have had the intent to transfer any title that he possessed.

The State does not urge such a broad meaning of title; it would restrict title to an intent to permanently transfer the vehicle. The concept of "permanent" was rejected as an element of § 66–3–504, N.M.S. A.1978 which is a part of the same special anti-theft laws as is § 66–3–505, supra. *State v. Austin,* 80 N.M. 748, 461 P.2d 230 (Ct.App.1969). Neither the wording nor the intent of § 66–3–505, supra, require a concept of "permanency." Any intentional passing of the transferor's title meets the statutory requirement; thus, the requirement of passing title is met where the title is possession and there is an intentional transfer, whether a sale or a loan. This accords with the statutory purpose of preventing the transfer of stolen vehicles.

The instruction in this case was incorrect because the instruction required a permanent transfer. Defendant was not harmed by this error because the error added to the prosecution's burden of proof. The issue, however, is whether the instruction omitted an element of the statutory crime. There was no omission because the instruction stated that defendant must have intended to part with his possession. Since, in this case, defendant's title was his possession, the title element of the statute was met.

Until such time as an uniform instruction is adopted, we suggest that the instruction refer to the "intent to pass title" with an explanation of what is sufficient title under the statute.

The judgments and sentences are affirmed.

IT IS SO ORDERED.

HENDLEY and ANDREWS, JJ., concur.