686 P.2d 937

**STATE of New Mexico, Plaintiff-Appellee,**

v.

**Sophie MARTIN, Defendant-Appellant.**

**No. 14898.**

Supreme Court of New Mexico.

July 25, 1984.

Rehearing Denied Aug. 30, 1984.

Leon Taylor, Dan Rakes, Michael Slosberg, Albuquerque, for defendant-appellant.

Paul Bardacke, Atty. Gen., Heidi Topp Brooks, Asst. Atty. Gen., Santa Fe, Steven H. Schiff, Dist. Atty., Albuquerque, for plaintiff-appellee.

## OPINION

FEDERICI, Chief Justice.

Defendant-appellant Sophie Martin (defendant) appeals her conviction in Bernalillo County District Court of first degree murder for the death of her husband Jack Martin (decedent). We reverse and remand for a new trial.

Defendant raises twelve points of error. We reverse on two grounds: (I) that the prosecutor made improper comments pertaining to defendant's decision to exercise her constitutional right to remain silent; and (II) that the cumulative impact of errors committed in this trial was so prejudicial that it deprived defendant of a fair trial.

## I. PROSECUTION COMMENTS ON DEFENDANT'S PRE–TRIAL SILENCE

Defendant claims that the prosecution made improper comments pertaining to her decision to exercise her constitutional right to remain silent in three separate instances: questions concerning a purported prior inconsistent statement on life insurance forms she had completed; questions on cross-examination of defendant concerning the fact that she remained silent and did not testify until she had had a chance to hear all of the State's evidence; and questions regarding her failure to tell close family members that she shot her husband.

### A. Defendant's Statements On Life Insurance Forms

■ Following decedent's death, defendant received two life insurance claim forms. Defendant had been given her *Miranda* rights prior to the time she filled out the insurance forms. With one form she included a death certificate which stated the cause of death as "Shot by unknown assailant(s) with firearm." On the other form, in response to the question, "How did the accident happen? (Describe fully)," de-

fendant wrote "Shot by unknown assailants."

The prosecution argues that these statements on the life insurance forms are inconsistent with defendant's claim at trial that she shot decedent. The prosecution contends that these statements are admissible as prior inconsistent statements under NMSA 1978, Evid.Rule 801(d)(1)(A) (Repl. Pamp.1983) and as admissions under NMSA 1978, Evid.Rule 801(d)(2)(A) (Repl. Pamp.1983). The prosecution further claims that there is no issue of silence involved, since defendant did not remain silent. We agree.

New Mexico's Constitution, N.M. Const. art. II, Section 15, and the United States Constitution, U.S. Const. amend. V, prohibit impeachment on the basis of a defendant's silence following *Miranda* warnings, *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). *See State v. Ramirez,* 98 N.M. 268, 648 P.2d 307 (1982); *Doyle v. Ohio,* 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976). However, defendant in this case made affirmative statements in response to the questions on the forms. The United States Supreme Court has held that cross-examination that merely inquires into prior inconsistent statements makes no unfair use of silence, because a defendant who voluntarily speaks after receiving *Miranda* warnings has not remained silent. *Anderson v. Charles,* 447 U.S. 404, 100 S.Ct. 2180, 65 L.Ed.2d 222 (1980). The same logic applies to the right to remain silent provided by N.M. Const. art. II, Section 15.

Defendant in the instant case voluntarily provided the information requested on the forms. She was not in custody at the time she did so. Therefore, *Miranda* does not apply, and these statements may be used for proper impeachment purposes at trial.

**B. Cross-Examination of Defendant as to Credibility**

Defendant also objects to the prosecutor's questioning defendant about whether she had heard all of the State's evidence before testifying. Defendant argues that these questions comprise an improper comment on her right to remain silent because they would tend to lead the jury to incorrectly infer that defendant had an affirmative duty to reveal her defense before the presentation of her case. The State disagrees and claims that the question merely implies that, having heard all of the evidence, defendant is in a good position to conform her story to what the jury has already heard.

■ When a defendant waives her right to remain silent and takes the stand in her own defense, she subjects herself to cross-examination on the credibility of her testimony. *State v. Robinson,* 157 N.J.Super. 118, 384 A.2d 569, *certif. denied,* 77 N.J. 484, 391 A.2d 498 (1978). The prosecutor's question as to whether defendant had heard the previous testimony was a proper inquiry into the credibility of her testimony. *State v. Hoxsie,* 101 N.M. 7, 677 P.2d 620 (1984).

**C. Defendant's Failure to Disclose That She Had Shot Decedent**

The final instance complained of by defendant pertaining to her right to remain silent relates to the prosecutor's questions concerning whether she told anyone, before the trial, that she had shot decedent. This line of questioning was clearly a comment on defendant's pre-trial silence which followed her receipt of *Miranda* warnings. The question before us is whether this comment is impermissible under U.S. Const. amend. V, XIV, or N.M. Const. art. II, Section 15.

■ Comments on a defendant's silence instituted by the State which follow *Miranda* warnings have an intolerable prejudicial impact requiring reversal, unless the defendant's silence has a significant probative value. *United States v. Hale,* 422 U.S. 171, 95 S.Ct. 2133, 45 L.Ed.2d 99 (1975); *State v. Baca,* 89 N.M. 204, 549 P.2d 282 (1976); *State v. Lara,* 88 N.M. 233, 539 P.2d 623 (Ct.App.1975). Comment of this type constitutes "plain error." NMSA 1978, Evid.R. 103(d) (Repl.Pamp.1983);

*State v. Ramirez,* 98 N.M. 268, 648 P.2d 307 (1982).

The State argues that the right to remain silent applies only to silence in the context of custodial interrogation. We refuse to accept such a narrow interpretation of this constitutional right. The important determination to be made on this issue is whether the silence has any probative value. In *United States v. Hale,* 422 U.S. 171, 95 S.Ct. 2133, 45 L.Ed.2d 99 (1975), the United States Supreme Court addressed the propriety of using a defendant's silence, after *Miranda* warnings had been given, for purposes of impeachment. In *Hale,* the Court stated, "In most circumstances silence is so ambiguous that it is of little probative force." *Id.* at 176, 95 S.Ct. at 2136. The Court noted that there was particularly little value in the silence of one who has been given *Miranda* warnings. The Court also pointed out that there is a high danger, "that the jury is likely to assign much more weight to the defendant's previous silence than is warranted." *Id.* at 180, 95 S.Ct. at 2138. In *Doyle v. Ohio,* 426 U.S. 610, 619, 96 S.Ct. 2240, 2245, 49 L.Ed.2d 91 (1976), under a similar fact pattern, the Court held that "the use for impeachment purposes of petitioners' silence * * * after receiving *Miranda* warnings, violated the Due Process Clause of the Fourteenth Amendment."

The circumstances in *Hale* and *Doyle* were very similar to those in the case before us. In each case the defendant presented exculpatory testimony at trial which had not been presented at any earlier time. In each case the prosecution argued that the failure to relate the exculpatory facts to someone at an earlier time supported a theory of recent fabrication, and was therefore probative. The Court in *Hale* and *Doyle* rejected this argument, primarily on the grounds that silence which follows official notification of the constitutional right to remain silent is very ambiguous and therefore is not highly probative.

One important difference between this case and *Hale* and *Doyle* is that defendant in this case did not tell either her daughters or the police what had happened. There is some probative value in defendant's silence because it is more likely that a suspect in a crime will tell family members, as opposed to police, about the surrounding circumstances of the act. However, defendant is not under any compulsion to divulge information to family members. The value of the failure to tell family members is especially weak in this case because there is evidence that emotional trauma limited defendant's ability to speak. Also, there is evidence that the police were treating defendant as a suspect and were questioning family members about the homicide.

Notwithstanding the limited value of defendant's failure to tell her daughters that she shot decedent, the prosecutor directly commented on defendant's post-*Miranda,* post-arrest silence when he asked, "[I]sn't it a fact that you didn't tell them [your family] anything so that I couldn't learn about it [your story] in October when I called them to the witness stand?" This statement alone constitutes grounds for reversal of defendant's conviction. *State v. Ramirez,* 98 N.M. 268, 648 P.2d 307 (1982); *State v. Lara,* 88 N.M. 233, 539 P.2d 623 (Ct.App.1975). However, the prosecutor compounded the error by repeatedly arguing this improper inference before the jury in closing arguments. Defendant is not required to reveal her theory of defense to the prosecution before trial and any inference that she should have done so is highly improper. The State's reliance on *Jenkins v. Anderson,* 447 U.S. 231, 100 S.Ct. 2124, 65 L.Ed.2d 86 (1980), to support the proposition that pre-arrest silence is probative for impeachment purposes is misdirected because that case involved a defendant's silence before *Miranda* warnings were given. We reverse on this issue.

We address the remaining points of error individually in order to assess the degree, if any, to which each contributed to the accumulation of error which also requires reversal in this case.

## II. CUMULATIVE ERROR

We agree with defendant that the errors in this trial, in the aggregate, denied her of her right to a fair trial. Cumulative

error requires reversal of a defendant's conviction when the cumulative impact of errors which occurred at trial was so prejudicial that the defendant was deprived of a fair trial. *State v. Vallejos*, 86 N.M. 39, 519 P.2d 135 (Ct.App.1974). We recognize that in New Mexico the doctrine of cumulative error is to be strictly applied. *State v. Hamilton*, 89 N.M. 746, 557 P.2d 1095 (1976). The doctrine cannot be invoked if no irregularities occurred, *State v. Stephens*, 99 N.M. 32, 653 P.2d 863 (1982), or if the record as a whole demonstrates that a defendant received a fair trial, *State v. Victorian*, 84 N.M. 491, 505 P.2d 436 (1973). We have the responsibility, however, to insure that a person convicted of a crime has a fair trial. *State v. Gomez*, 75 N.M. 545, 408 P.2d 48 (1965). We must reverse any conviction obtained in a proceeding in which the cumulative impact of irregularities is so prejudicial to a defendant that he is deprived of his fundamental right to a fair trial. U.S. Const. amend. VI, XIV; N.M. Const. art. II, § 14.

Much of the State's argument on appeal is based on defense counsel's failure to make timely objections. Errors not specifically objected to at trial may be reviewed by this Court if they concern:

jurisdictional questions or questions involving:

　(a) general public interest;

　(b) fundamental rights of a party; or

　(c) facts or circumstances occurring or arising, or first becoming known after the trial court lost jurisdiction.

NMSA 1978, Crim., Child.Ct., Dom.Rel. & W/C App.R. 308 (Repl.Pamp.1983). *See State v. Vallejos*, 86 N.M. 39, 519 P.2d 135 (Ct.App.1974). We review the errors complained of in this case to determine whether their accumulation amounted to fundamental error. We hold that the following points of error which were raised by defendant on appeal contributed to an accumulation of error which requires reversal.

## A. State's Cross-Examination of Defendant Regarding Her Relationship With Her Previous Husband

The prosecution was allowed to cross-examine defendant about her prior marriage to Richard Esquibel, who is now deceased. Initially, the questioning involved possible physical abuse that may have been inflicted on defendant by Esquibel. Over defense objection, the prosecutor was also allowed to question defendant about Esquibel's criminal record. Defense counsel objected to the questions because they elicited irrelevant testimony and because they were outside the scope of the direct examination.

It is within the discretion of the trial court to expand the scope of cross-examination. NMSA 1978, Evid.R. 611(b) (Repl. Pamp.1983). Inquiry into additional matters must, however, be conducted as if on direct examination. *Id.* Rule 611(b) does not allow the trial court discretion to admit evidence which is otherwise inadmissible because it is irrelevant, NMSA 1978, Evid. Rule 402 (Repl.Pamp.1983), or if the probative value is substantially outweighed by the danger of unfair prejudice, NMSA 1978, Evid.Rule 403 (Repl.Pamp.1983).

In this case, evidence of prior abuse of defendant by Esquibel is probative. It tends to support the State's claim that it gave defendant special knowledge which would be useful in fabricating a claim of abuse by decedent. Evidence concerning Esquibel's burning defendant with cigarettes is particularly relevant in light of expert testimony that it is impossible to determine the actual age of scar tissue.

■ However, evidence of Esquibel's prior criminal history and drug use have no probative value in relation to defendant's actions toward decedent. This evidence, plus reference to Esquibel as "Richard the Roach," was an improper attempt to present the jury with the implication that since defendant was previously married to a person of bad character, she was also of poor character or lacked credibility. *Cf. State v. Mills*, 94 N.M. 17, 606 P.2d 1111 (Ct.App.), *cert. denied*, 94 N.M. 628, 614 P.2d 545 (1980). The evidence offered by the prosecution failed to show a logical connection between Esquibel's prior crimi-

nal history, his drug use, his nickname, or defendant's ability to divorce him, and the defendant's actions toward decedent. It was error for the court to admit any evidence on these issues.

### B. Trial Court's Refusal to Allow the Defense to Show Films Admitted Into Evidence

■ The State stipulated to the entry of four sexually explicit films which were retrieved from decedent's home by personnel from the Albuquerque Police Department, Internal Affairs Division. After the films were admitted the judge denied defense counsel's request that the films be shown to the jury. Instead, the films were passed to the jury so that they could see the representative photographs on the covers. The judge also told the jury they could see the films if they determined, during their deliberations, that there was some materiality or relevance beyond the photographs on the covers of the films. The jury was instructed to send the judge a note if they determined they needed to view the films. The State claims this is sufficient opportunity to view the evidence. We do not agree.

The prosecution's stipulation in this case should not be allowed to eviscerate the value of the evidence presented. Even though a judicial admission generally does away with the *necessity* of proof by the benefiting party, such an admission does not necessarily prohibit the benefiting party from presenting his evidence to the jury. *See State v. Upton,* 60 N.M. 205, 290 P.2d 440 (1955). "A cold stipulation can deprive a party 'of the legitimate moral force of his evidence' * * *. In most cases, a party has the right 'to present to the jury a picture of the events relied upon.'" *United States v. Grassi,* 602 F.2d 1192, 1197 (5th Cir.1979) (citations omitted), *vacated on other grounds,* 448 U.S. 902, 100 S.Ct. 3041, 65 L.Ed.2d 1131 (1980), *on remand,* 626 F.2d 444 (5th Cir.1980), *cert. denied,* 450 U.S. 956, 101 S.Ct. 1415, 67 L.Ed.2d 381 (1981). In *Grassi,* the Fifth Circuit Court of Appeals found that it was fair for the trial court to allow the prosecution to show three of five films in a trial involving the interstate shipment of pornographic material, although the trial court should have required the prosecution to accept the defense's offer to stipulate to the obscene nature of the remainder of the films. In the case before us, after the films were admitted into evidence, the defense was not allowed to show any of the films to the jury. This was an improper limitation on defendant's right to present her evidence to the jury.

Defendant sought to use the films to corroborate her testimony regarding decedent's tendencies towards violent sexual conduct and his abuse of defendant. The decision to admit the films carried with it a determination that the films were relevant to the issue. The determination of whether evidence is relevant, and therefore admissible, rests within the discretion of the trial court. NMSA 1978, Evid.R. 104(a) (Repl. Pamp.1983); *Wilson v. Hayner,* 98 N.M. 514, 650 P.2d 36 (Ct.App.1982). Allowing the jury to determine whether the films were relevant, and whether they should therefore view the films, amounts to exclusion of otherwise relevant and admissible evidence. This is error. *See State ex rel. State Highway Commission v. Bassett,* 81 N.M. 345, 467 P.2d 11 (1970). It is for the trial court, not the jury, to determine whether evidence is relevant and admissible. Given the nature of these films, the requirement that a viewing had to be specifically requested by the jury placed an unreasonable burden on any juror or jurors who had legitimate concerns as to the import of the evidence. A jury should not be forced to "second-guess the favorable ruling of the court on admissibility and to disregard the evidence if they find the evidence inadmissible; their function is to determine weight and credibility, not admissibility." M. Graham, *Handbook of Federal Evidence* § 104.1 (1981). The trial court erred in its refusal to show the sexually explicit films, without a specific request by the jury for a viewing.

## C. Conduct of the Trial Judge

Defendant claims that throughout the course of the trial the judge made comments and rulings which demonstrated extreme bias against the defendant's case. Defendant also claims that the judge made facial gestures, shook his head and smiled as defendant testified. Defendant argues that this misconduct denied defendant her constitutional right to trial by an impartial tribunal. U.S. Const. amend. VI, XIV; N.M. Const. art. II, § 14.

A trial judge must exercise great care to assure a criminal defendant a fair and impartial trial. *See* Annot., 34 A.L.R.3d 1313 (1970). This required fairness and impartiality may often run counter to natural human reaction, particularly where the case involves a heinous crime, *State v. Nordstrom*, R.I., 408 A.2d 601 (1979), or the demeanor of an attorney has been particularly disrespectful or antagonistic, *United States v. Spears*, 558 F.2d 1296 (7th Cir.1977); *People v. Di Carlo*, 242 App.Div. 328, 275 N.Y.S. 40 (1934). Nonetheless, fairness and impartiality are required of a judge and necessitate that the judge "be patient, dignified and courteous to litigants, jurors, witnesses, lawyers and others with whom he deals in his official capacity." NMSA 1978, Code of Judicial Conduct, Canon 3(A)(3) (Repl.Pamp.1983).

■ In the present case, defendant contends that certain improprieties on the part of the trial judge took place off the record. Defendant relies on affidavits attached to her new trial motion in challenging the purported comments and gestures. Affidavits so presented do not establish the record. *State v. Haar*, 94 N.M. 539, 612 P.2d 1350 (Ct.App.), *cert. denied*, 94 N.M. 674, 615 P.2d 991 (1980).

■ Defense counsel did, at one point, attempt to make a record concerning comments he claimed the trial judge had made during a recess. The trial judge, however, refused defense counsel the opportunity to establish a record on defense counsel's objections to the trial judge's conduct. This was improper. *Butler v. United States*, 188 F.2d 24 (D.C.Cir.1951). In order for this Court to review a defendant's claim of improper conduct on the part of a trial judge, some evidence of the conduct must be included in the record. *State v. Gurule*, 90 N.M. 87, 559 P.2d 1214 (Ct. App.), *cert. denied*, 90 N.M. 254, 561 P.2d 1347 (1977). Although tape-recorded transcripts do give an appellate court some indication of the tone of statements made in the transcript, they cannot reflect whether a trial court indulged in improper mannerisms, gestures, or outside statements, unless counsel is given an opportunity to record fully and accurately what has transpired. *See State v. Herrera*, 90 N.M. 306, 563 P.2d 100 (Ct.App.), *cert. denied*, 90 N.M. 637, 567 P.2d 485 (1977); Annot., 49 A.L.R.3d 1186 (1973).

■ Defendant also argues that the taped transcript contains a number of unnecessary statements made by the judge to defense counsel. *See* Annot., 62 A.L.R.2d 166 (1958). At trial, defendant made no objection to the statements. NMSA 1978, Crim., Child.Ct., Dom.Rel. and W/C App.R. 308 (Repl.Pamp.1983). The issue was not properly brought to the attention of the trial court and was therefore not preserved as an independent point for review. *State v. Wilson*, 86 N.M. 348, 524 P.2d 520 (1974). We consider the issue, however, only for purposes of determining whether the cumulative impact of irregularities, including the trial judge's conduct, deprived defendant of her right to a fair trial. After reviewing the comments complained of, we hold that, while none is so prejudicial as to require reversal in and of itself, they add to the totality of irregularities which occurred in the trial of this case and which resulted in the cumulative error that deprived defendant of a fair trial.

## D. Admissibility of Certain Testimonial Evidence

■ Defendant claims that the court erred when it refused to allow Fay Hansen to testify as to whether defendant had ever told her of decedent's sexual impotence. Defense counsel's argument for admissibil-

ity essentially contains two points. One is that the statement is not offered to prove the truth of the matter asserted. The other is that, if it is hearsay, it is admissible under the "existing state of mind" exception to the hearsay rule, NMSA 1978, Evid. Rule 803(3) (Repl.Pamp.1983). NMSA 1978, Evid.Rule 801(c) (Repl.Pamp.1983) defines hearsay as, "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." This Court has made it clear that,

> Such extrajudicial statements or writings are subject to the exclusionary impact of the hearsay rule only when they are offered to prove the truth of the matter asserted therein. Obviously, proof of utterances or writings may be made for a number of purposes other than to prove the truth of the matter asserted.

*McCord v. Ashbaugh,* 67 N.M. 61, 64, 352 P.2d 641, 643 (1960) (citations omitted). The tendered testimony in this case was not hearsay as it was not offered to show that decedent was impotent, but merely to counter the prosecution's repeated questions regarding whether defendant had ever told anyone of the problems that she and decedent had been experiencing. Since we hold that this testimony was not hearsay, we need not address the Rule 803(3) issue.

### E. Limitation of Defense Examination of Police Department Personnel Concerning Films Which Were Recovered From Decedent's Home

■ The State stipulated to the entry of four sexually explicit films and a sex dictionary which were retrieved from the scene of the killing by personnel from the Albuquerque Police Department, Internal Affairs Division. Defense counsel attempted to ask further questions of a witness who was a Captain in Internal Affairs regarding a possible police cover-up and the failure of Internal Affairs to turn over a purported "snuff film." The judge found this line of questioning to be irrelevant in light of the fact that the films and dictionary had already been admitted.

The evidence which defense counsel attempted to elicit through his proposed questioning tended to show bias on the part of the witness in investigating the crime. Evidence that discredits a witness by showing possible bias is admissible. NMSA 1978, Evid.R. 607 (Repl.Pamp.1983); *See State v. White,* 58 N.M. 324, 270 P.2d 727 (1954). Therefore, the trial court abused its discretion in limiting defendant's examination of witnesses on these issues.

### III. ADDITIONAL POINTS RAISED BY DEFENDANT

We hold that no error exists in the remaining points raised by defendant on appeal. We address them, however, in order to clarify the issues for the trial court on remand.

### A. State's Asserted Failure to Preserve Exculpatory Evidence

■ Defendant claims her conviction should be reversed because the State failed to preserve a tissue that was used to pick up the gun found lying next to the victim. We have previously adopted a three-part test to determine whether the deprivation of evidence constitutes reversible error:

> 1) The State either breached some duty or intentionally deprived the defendant of evidence;
>
> 2) The improperly 'suppressed' evidence must have been material; and
>
> 3) The suppression of this evidence prejudiced the defendant.

*State v. Chouinard,* 96 N.M. 658, 661, 634 P.2d 680, 683 (1981), *cert. denied,* 456 U.S. 930, 102 S.Ct. 1980, 72 L.Ed.2d 447 (1982). *See also State v. Johnson,* 99 N.M. 682, 662 P.2d 1349 (1983).

The record in this case contains no evidence that defendant was intentionally deprived of the tissue. There is no indication in the record as to what happened to the tissue. However, testimony was given which indicated that the police were not concerned with the tissue because they believed that it did not have any evidentiary value. Upon review of the record, we find this belief to have been reasonable. *State*

*v. Johnson; State v. Stephens,* 93 N.M. 368, 600 P.2d 820 (1979).

The tissue was not material, and its unavailability did not prejudice the defendant. As the United States Supreme Court has said, "The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense." *United States v. Agurs,* 427 U.S. 97, 110–111, 96 S.Ct. 2392, 2400–2401, 49 L.Ed.2d 342 (1976). The failure of the State to preserve the tissue used by officers to pick up the gun found next to the victim was not reversible error, and was not error of such a nature that it added substantially to the aggregate of errors which took place at trial.

**B. Instruction to Prospective Jurors That the State Would Not Be Seeking the Death Penalty**

During voir dire the judge told veniremen that the State would not be seeking the death penalty. Defendant alleges that she was not properly notified that this explanation would be given. Defendant further argues that NMSA 1978, UJI Crim. 50.06 (Repl.Pamp.1982), prohibits the jury from considering the consequences of its verdict.

The State contends that defendant did not object when the explanation was made, and that it is proper to give this information on voir dire, notwithstanding any objection, citing the Use Note to UJI Crim. 50.06. The Use Note states, in pertinent part: "In a capital case it is proper for the state or court in the voir dire or in the court's opening or closing remarks to tell the jury that the state will not seek the death penalty." *Id.* This language was added to the Use Note in 1982. We hold that since this was a capital case it was proper for the judge to give this information to prospective jurors during voir dire. To the extent which *State v. Gallegos,* 96 N.M. 54, 627 P.2d 1253 (Ct.App.1981), conflicts with this holding, it is expressly overruled.

**C. Trial Court's Limitation of the Testimony of Defendant's Expert Witness**

Defendant's expert psychological witness, Dr. Samuel Roll, was not allowed to testify as to his opinion that defendant was telling the truth when she described the events leading up to the killing. Defendant argues that this was improper because the testimony would have helped the jury in its decision, and opinion testimony as to an ultimate issue is allowed under NMSA 1978, Evid.Rule 704 (Repl.Pamp.1983).

Dr. Roll was qualified as an expert witness in clinical psychology. He was allowed to testify that he had conducted and reviewed various personality tests on defendant and that he had interviewed her about her relationship with decedent on several occasions. Dr. Roll outlined the general characteristics of a sexual sadist and said that defendant's description of decedent fit very closely with the classical picture of a sexual sadist. Defense counsel then introduced evidence to try to establish that Dr. Roll had special expertise in detecting deception in persons undergoing psychological testing. Thereafter, defense counsel attempted to ask Dr. Roll whether he had formed a conclusion, based on tests, interviews and other corroborative information, as to whether there was any fabrication or deception in defendant's account of events preceding the killing. At this point the prosecution objected, the jury was excused and the witness was voir dired. The trial court ultimately ruled in favor of the State.

The State had two objections to the proposed question. The first was that the credibility of a witness is for the jury to determine. The State bases this claim on a general argument that no expert, with the possible exception of polygraphers, can determine witness credibility any better than jurors can. This argument runs counter to the policy which underlies the admissibility of expert testimony.

Expert testimony is admissible even if "it embraces an ultimate issue to be decided by the trier of fact." NMSA 1978, Evid.R. 704 (Repl.Pamp.1983); *see State v.*

*Ellis,* 89 N.M. 194, 548 P.2d 1212 (Ct.App.), *cert. denied,* 89 N.M. 206, 549 P.2d 284 (1976). This Court recognizes the dangers inherent in allowing expert testimony on the issue of a witness' credibility or a witness' character in terms of his tendencies towards truthfulness. These dangers have led to the development of certain safeguards. Expert testimony on the issue must be relevant, NMSA 1978, Evid.Rules 401, 402 (Repl.Pamp.1983); *State v. Blea,* 101 N.M. 323, 681 P.2d 1100 (1984), and it must meet evidentiary requirements for the admissibility of character evidence, NMSA 1978, Evid.Rules 404, 405, 608 (Repl.Pamp.1983); *cf. State v. Lopez,* 84 N.M. 805, 508 P.2d 1292 (1973). In the case of polygraph examinations, additional requirements were established to insure the reliability of the testimony. *See State v. Dorsey,* 88 N.M. 184, 539 P.2d 204 (1975). This Court has now formalized additional requirements in our rules of evidence, NMSA 1978, Evid.Rule 707 (Repl.Pamp. 1983). There is, however, nothing magical about a polygraph exam. It is merely a scientific technique which has been held in New Mexico to be a useful tool in appropriate situations, in assisting the jury in its ultimate goal of discerning the truth. Other techniques, under approved circumstances, are similarly admissible. *See Simon Neustadt Family Center, Inc. v. Bludworth,* 97 N.M. 500, 641 P.2d 531 (1982); *State v. Beachum,* 97 N.M. 682, 643 P.2d 246 (Ct.App.1981), *cert. denied,* 98 N.M. 51, 644 P.2d 1040 (1982).

The trial judge in this case applied the wrong standard to the quantum of evidence which must be presented in order to support the admissibility of this type of expert testimony. Dr. Roll testified that he could give an opinion with a reasonable degree of medical probability as to whether defendant was fabricating her recent history in this particular case, given the specific surrounding circumstances. When Dr. Roll stated that he could tell when a person is telling the truth in some, but not all, cases, the court replied:

> Well, I'm glad you take that position, because otherwise we would have noth-

ing to do but envy your clairvoyance, your omnipotence, and your intelligence. Maybe only God can do some of those things.

This is a misstatement of the test. The New Mexico Rules of Evidence do not require clairvoyance or omnipotence. The court must merely determine whether the scientific procedure which supports the testimony is "based on a well-recognized scientific principle or discovery and whether it is capable of supporting opinions based on a reasonable probability rather than conjecture." *State v. Blea,* 101 N.M. 323, 681 P.2d 1100, 1103 (1984).

In the instant case, it does not appear that any evidence was tendered which would support a finding that the particular technique relied upon by Dr. Roll for gauging the credibility of a witness has gained general acceptance in the field of clinical psychology. *See State v. Trimble,* 68 N.M. 406, 362 P.2d 788 (1961). Therefore, we cannot say that the trial judge abused his discretion by denying the testimony on this particular theory.

The State's second, more specific argument, is that Dr. Roll was never properly qualified as an expert in credibility and fabrication. A trial judge has discretion to determine whether an expert is sufficiently qualified to testify in a particular case. This discretion will be interfered with only when it has been abused. *State v. Garcia,* 76 N.M. 171, 413 P.2d 210 (1966). We hold that the evidence which was brought to our attention on appeal does not establish that the discretion allowed the trial judge was abused in this case.

**D. Admissibility of Certain Testimonial Evidence**

Defense counsel, during direct examination of Fay Hansen, attempted to elicit testimony to the effect that defendant had told her that decedent had threatened defendant. The prosecution objected on the basis of hearsay, and the judge sustained the objection saying, "I'm not going to allow any hearsay in * * *". No hearsay

today." In another statement the judge implied that he would allow testimony as to what defendant said but not as to what defendant said decedent said. This hearsay within hearsay was properly rejected.

Later the same day, on rebuttal, the prosecution tendered testimony by Anita Campbell that six years earlier, following a sexual relationship between Campbell and decedent, decedent had told her that defendant had threatened decedent and Campbell. Defense counsel objected on the basis of hearsay. Nonetheless, the judge ruled the testimony was admissible under the "statement of recent perception" exception to the hearsay rule, NMSA 1978, Evid. Rule 804(b)(2) (Repl.Pamp.1983).

In order for a statement to be admissible under an exception to the hearsay rule it must be "clothed with the indicia of reliability." *State v. Robinson*, 94 N.M. 693, 698, 616 P.2d 406, 411 (1980). Rule 804(b)(2) contains a list of considerations which, if met, support the reliability of the statement. In this case all of the "indicia of reliability" exist. Defense counsel argues that this statement is not "recent" because it was made six years ago. The important time period, however, is the time between when the event occurred and when the statement was made. *See State v. Maestas*, 92 N.M. 135, 584 P.2d 182 (Ct. App.1978). In this case that appears to have been a matter of hours, while declarant's recollection of the event was still clear. Although the hearsay rule was applied unequally by the trial court, the court did not err in admitting this evidence.

### E. Additional Points Claimed to Contribute to Cumulative Error

Defendant raises three additional errors which she claims added to the cumulative error which occurred at this trial: (1) denial of a change of venue; (2) repetitive and cumulative instructions on the charge of murder; and (3) failure to give a self-defense instruction alerting the jury to subjective factors, such as physical characteristics of defendant, which she claims made her actions more reasonable.

Defendant failed to direct this Court to any authority and failed to otherwise make an argument in support of her contention that the court erred in denying a change of venue. Defendant's brief does not suffice to present the question for our review. *State v. Rhodes*, 77 N.M. 536, 425 P.2d 47 (1967). The trial court possesses broad discretion in dealing with motions for change of venue, and its decisions on the issue will not be disturbed on appeal absent a showing of an abuse of that discretion. *State v. Montano*, 93 N.M. 436, 601 P.2d 69 (Ct.App.), *cert. denied*, 93 N.M. 683, 604 P.2d 821 (1979).

Jury instructions 11 and 20 given by the trial court repeated the order of deliberations which the jury was to follow in this case. These two instructions were based on NMSA 1978, UJI Crim. 2.40 and 50.12 (Repl.Pamp.1982). The Use Note for the current version of NMSA 1978, UJI Crim. 50.12 (Supp.1983), explains that the instruction should not be given for homicide charges. We note that a court should refrain from giving repetitive jury instructions. *See White Auto Stores v. Reyes*, 223 F.2d 298 (10th Cir.1955). The repetition in this case was, however, not prejudicial. *State ex rel. State Highway Commission v. Atchison, Topeka and Santa Fe Railway Co.*, 76 N.M. 587, 417 P.2d 68 (1966).

Defendant failed to tender any self-defense instruction similar to the one she now contends should have been given. We will not review instructions on appeal where defendant neither objected at trial to the instruction given nor tendered her desired instruction. *State v. Blea*, 101 N.M. 323, 681 P.2d 1100 (1984).

### IV. CONCLUSION

Notwithstanding that several points of error raised by the defendant are without merit, we hold that the accumulation of error in this case deprived defendant of a fair trial. The result we have reached in this case renders unnecessary a discussion of defendant's contention that the evidence

presented at trial was insufficient to support a finding of guilt beyond a reasonable doubt.

Defendant's conviction is reversed. The cause is remanded for a new trial.

IT IS SO ORDERED.

SOSA, S.J., concurs.

RIORDAN and WALTERS, JJ., specially concurring.

STOWERS, J., dissenting.

WALTERS, Justice (specially concurring).

I concur in all portions of the majority opinion except Point III B. I believe the Court of Appeals was correct in State v. Gallegos, and that the 1982 addition to the Use Note referred to by the majority was improvidently approved. The jury's obligation to render a true verdict *should* be fulfilled without concern for the consequences of the verdict. Either UJI Crim. 50.06 ought to be given, as promulgated, in all cases without elaboration, or not in any.

As amended, the Use Note for UJI Crim. 50.06 still forbids a jury to know that death may be the penalty for one accused and convicted in a capital murder case, thus properly anesthetizing any feelings of sympathy or of guilty conscience that might influence its deliberations if it were aware that death would result from a verdict of guilty; but it permits advising a jury when death will not be sought as the penalty, thereby tacitly encouraging a guilty verdict because the conscience-cleansing instruction informs the jury that, even if it finds defendant guilty, it will *not* have had a role in putting defendant to death. Such subtle pressures on a jury's verdict are improper and should not be condoned.

RIORDAN, Justice (specially concurring).

I concur with Chief Justice Federici that the defendant is entitled to a new trial.

I cannot concur, however, with the way the Chief Justice addresses the issue of the cross-examination of the defendant about her statements on the insurance forms as to "cause of death," or the issue of the psychologist's, Dr. Roll's, testimony as an "expert" witness.

I agree with Chief Justice Federici that the defendant's statements on the insurance forms are prior inconsistent statements which may be used for impeachment. I therefore agree that the Chief Justice reaches the proper result in upholding the cross-examination of the defendant as to those statements. The defendant's claim that the cross-examination violates her right to remain silent is frivolous.

The defendant's statements on the insurance forms were not the result of custodial interrogation and therefore are not precluded nor in any way affected by *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

> [T]he prosecution may not use statements * * * stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.

*Id.* at 444, 86 S.Ct. at 1612.

Since the statements were not in response to custodial interrogation, it is immaterial whether the defendant had been advised of her rights. In this case, she *voluntarily* filled out the insurance claim forms. Therefore, *Miranda* does not apply.

I also cannot concur with the apparent holding that unobjected-to statements by the trial judge may be considered as part of the "irregularities" that resulted in cumulative error. As stated by the Chief Justice, this Court does not consider errors which were not specifically objected to at trial unless the error falls within one of three exceptions. NMSA 1978, Crim., Child.Ct., Dom.Rel. & W/C App.R. 308 (Repl.Pamp.1983). Without citing to any

authority, the Chief Justice allows the accumulation of unobjected-to statements to fall within the "fundamental rights" exception.

A reviewing court's discretion for finding fundamental error is to be exercised with extreme caution, and fundamental error must be construed carefully. *See State v. Lott*, 73 N.M. 280, 387 P.2d 855 (1963); *State v. Tapia*, 79 N.M. 344, 443 P.2d 514 (Ct.App.1968). The Chief Justice's holding broadens the fundamental error exception by allowing defendants who fail to object to errors at trial to nevertheless obtain review simply by accumulating those unobjected-to errors.

Finally, I cannot concur with the holding that a psychologist may be called to support or attack the credibility of a witness.

Generally, expert testimony as to credibility of a witness is admissible if the subject matter involves organic or mental disorders * * *. If, however, the characteristic attacked does not involve some organic or mental disorder, or some impairment of the mental or physical faculties by injury, disease, or habit, expert testimony is usually excluded.

*Annot.*, 20 A.L.R. 3rd 684, 688, 689 (1968). The Chief Justice apparently holds that evidence is allowed attacking credibility (or I assume supporting it) as long as the witness testifies as an "expert."

Just because NMSA 1978, Evid.Rule 704 (Repl.Pamp.1983) specifies that the testimony is admissible even if "it embraces an ultimate issue to be decided by the trier of fact," I do not believe that expert testimony becomes admissible in every case on every issue. The trial will always evolve into a battle of the experts with the party having the most money being able to call the greatest number of experts to testify that a witness is or is not credible. The jury will lose sight of the real issue which is the credibility of the witness, not the credibility of the expert.

The greatest error in this case is the reliance upon the admission of polygraph test results as the basis for the discussion of the admission of the psychologist's testimony. Notwithstanding this Court's adoption of NMSA 1978, Evid.Rule 707 (Repl. Pamp.1983), there are still serious questions whether polygraph test results are generally accepted as reliable in the scientific community and should be admitted in court. In my opinion, the testimony about polygraph test results is time consuming, many times unreliable, and of dubious value to the trier of fact. Once the conductor of the polygraph test is cross-examined or the other side presents its "expert," the conductor's credibility, instead of the witness's, becomes the focus of the credibility issue.

I would hold that the trial court did not err in excluding the testimony of the psychologist because I believe it is inadmissible.

STOWERS, Justice (dissenting).

I respectfully dissent.

The majority is reversing defendant's conviction on two grounds: (1) improper comments made by the prosecution pertaining to defendant's silence; and (2) denial of defendant's right to a fair trial because of cumulative error.

The majority, relying on *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976) and *United States v. Hale*, 422 U.S. 171, 95 S.Ct. 2133, 45 L.Ed.2d 99 (1975), concludes that the prosecutor's questions regarding whether defendant told anyone, before the trial, that she had shot the decedent was an improper line of questioning, and therefore constitutionally impermissible. In *Doyle*, the U.S. Supreme Court held that the use for impeachment purposes of the defendant's silence, at the time of arrest, and after receiving *Miranda* warnings, violated the Due Process Clause of the Fourteenth Amendment. 426 U.S. at 619, 96 S.Ct. at 2245. In *Hale*, the Supreme Court held that the defendant's silence during police interrogation lacked significant probative value and under the circumstances of that case any reference to defendant's silence carried with it an intolerably prejudicial impact. These factual

situations are quite different from the present case, in which the prosecutor's question referred to defendant's failure to tell family members that she shot her husband and did not refer to any silence "at the time of arrest" as in *Doyle* or any silence "during police interrogation" as in *Hale*. The Supreme Court in both the *Doyle* and *Hale* cases specifically limited the holdings to "at the time of arrest" or "during police interrogation"; therefore, the majority's rationale is inapplicable to the factual situation in the present case.

Furthermore, the majority notes that "the important determination to be made on this issue is whether the silence has any probative value." Noting that the difference between this case and *Hale* and *Doyle* is that defendant "did not tell either her daughters or the police what had happened," the majority acknowledge that "[t]here is some probative value in defendant's silence because it is more likely that a suspect in a crime will tell family members, as opposed to police, about the surrounding circumstances of the act." The majority places too little value on the probative aspects of this silence; it is significant and material.

It is important to note that through this line of questioning, the State was seeking to show that the defendant's claim of self-defense was a fabrication. Furthermore, the defendant's claim of self-defense was not made known until the sixth day of trial, during defense counsel's opening statement. Certainly, the issue of the defendant's silence regarding her role in the killing became significant at this point due to the potential for recent fabrication. Evidence was presented that the defendant had stated on an insurance claim form that the decedent was shot by unknown assailants. The defendant was either not telling the truth about the unknown assailants or her self-defense position was a fabrication. The defendant's silence relating to both of these positions therefore had significant probative value, and the prosecutor was entitled to enquire accordingly. It is error for the majority to reverse on this ground. The State's questions regarding the defend-

ant's silence had no prejudicial impact requiring reversal due to the significant probative value of the questions.

In discussing defendant's failure to disclose that she had shot the decedent, the majority, without support, states that "[d]efendant is not required to reveal her theory of defense to the prosecution before trial and any inference that she should have done so is highly improper." This statement is erroneous and misleading. There are well recognized exceptions to this statement found in the Rules of Criminal Procedure. For example, a notice of alibi is required by NMSA 1978, Crim.P. Rule 32 (Repl.Pamp.1980), and a notice of an insanity defense is required by NMSA 1978, Crim.P.Rule 35 (Cum.Supp.1983).

Moreover, taking as correct the majority's statement regarding the revealing of defendant's theory of defense, the fact remains that the defendant is still required to comply with NMSA 1978, Crim.P.Rule 28 . (Cum.Supp.1983), just as the State is required to comply with NMSA 1978, Crim.P. Rule 27 (Cum.Supp.1983), and which in the normal course of events alerts each side to the other side's probable positions or defenses. Rule 28 requires that the evidence and witnesses of the defendant be disclosed to the State within thirty days after arraignment or filing of a waiver of arraignment or not less than ten days before trial, whichever date occurs earlier. The Rules of Criminal Procedure provide for reciprocal discovery rights and are intended to provide ample opportunity for investigation of facts. *See* Crim.P.Rule 27 (Cum.Supp. 1983); *State v. Smith*, 88 N.M. 541, 543 P.2d 834 (Ct.App.1975).

In the present case, the defendant failed to comply with Rule 28 by not timely disclosing evidence or witnesses to the State. The physician who testified on defendant's behalf as to scars from the alleged abuse done by decedent did not examine defendant until after three and one-half days of the State's case. The name of a psychologist who was defendant's primary expert witness and who examined defendant prior

to trial was made known to the State approximately seven days before trial. Moreover, when the State contacted the psychologist prior to trial, he had not completed his evaluation, making it impossible for the State to prepare for his testimony. None of the test results from his examination were ever made available to the State. Furthermore, these violations of Rule 28 in failing to timely disclose evidence and names of witnesses could properly have supported the State's theory that defendant had prepared her case at the last minute which was possibly due to the recent fabrication of the self-defense claim. The State could properly impeach defendant as to the State's contention that the self-defense claim was a recent fabrication.

The majority also reverses defendant's conviction because cumulative error denied defendant her right to a fair trial. The majority in this case has elevated non-prejudicial matters to a standard of cumulative error. The cumulative error doctrine states that we must consider the cumulative impact of the alleged items of misconduct and only where it is shown that an accumulation of irregularities, each of which in itself might be deemed harmless, in the aggregate, show the absence of a fair trial can a defendant's conviction be reversed. *State v. Vallejos*, 86 N.M. 39, 519 P.2d 135 (Ct.App.1974). The doctrine of cumulative error is to be strictly applied. *State v. Hamilton*, 89 N.M. 746, 557 P.2d 1095 (1976). If the record demonstrates that defendant received a fair trial, the doctrine cannot be invoked. *State v. Victorian*, 84 N.M. 491, 505 P.2d 436 (1973). The defendant did receive a fair trial.

The majority first asserts that evidence of prior abuse of defendant by her ex-husband, Esquibel, is probative because it tends to support the State's claim that it gave defendant special knowledge which would be useful in fabricating a claim of abuse by decedent. However, the majority holds that it was error for the court to admit evidence of Esquibel's prior criminal history and drug use, stating that it has no probative value in relation to defendant's actions toward decedent. This type of evidence was not relevant to show the kind of person Esquibel was, but was relevant to show the type of person the defendant associated with, had dealings with, and even married. Another purpose for asking such questions was to show that although defendant was married to Esquibel for seven and one-half years, and had three children with him, she had no trouble in making up her mind to divorce him. Defendant testified that decedent was much worse, however, testimony from defendant's own witnesses indicated that she was having difficulty in deciding to divorce decedent and, in fact, wanted him to come back to her. The State properly attempted to show that if defendant's testimony were true regarding the alleged abuse, it would be unlikely that she would have trouble making up her mind to divorce decedent in light of the fact that she had no difficulty in divorcing Esquibel. The State had the right to prove the guilt of defendant by any relevant fact. *See State v. Allen*, 91 N.M. 759, 581 P.2d 22 (Ct.App.), *cert. denied*, 91 N.M. 751, 580 P.2d 972 (1978). The evidence was relevant; there was no error in its admission.

The majority next holds that it was an improper limitation on defendant's right to present evidence after sexually explicit films had been admitted into evidence and were not shown to the jury. The films were passed to the jury so that they could see the representative photographs on the covers. The trial court stated that it was not going to require that the films be shown, but indicated that the jury was free to view the films if they desired.

This was a proper ruling on the part of the trial court. We recognize that the determination of relevancy, as well as materiality, rests largely within the discretion of the trial court. *Wilson v. Hayner*, 98 N.M. 514, 650 P.2d 36 (Ct.App.1982). However, the trial court cannot interfere and tell the jury how to consider the evidence. The amount of time to be spent in deliberation and with what evidence is a matter for the jury to determine. *See State v. Mosier*, 83 N.M. 213, 490 P.2d 471 (Ct.App.1971). Sim-

ilarly, it is for the jury to determine the weight and credibility of the evidence. There was no error shown in this regard in the present case. The jury was allowed to decide whether it wanted to view the contents of the evidence. This type of decision is made by juries every day. It was not necessary for the jury to look at each frame of film to know the contents. The jury knew what the films were and had the opportunity to consider them in their deliberations. Had the jury needed or wanted additional information about the films, it was available for the asking. The trial court fulfilled its duty by making the films available to the jury.

The fundamental issue in this case is whether the defendant received a fair trial. This case is not one in which an accumulation of irregularities exists. The defendant received a fair trial. Her conviction should be affirmed.