432 P.2d 106

Ralph L. KNOTTS, Plaintiff-Appellant,

v.

SAFECO INSURANCE COMPANY OF
AMERICA, Defendant-Appellee.

No. 8240.

Supreme Court of New Mexico.

Sept. 25, 1967.

Krehbiel, Alsup & Beck, Clayton, for appellant.

Shaffer, Butt & Bass, Albuquerque, for appellee.

## OPINION

CHAVEZ, Chief Justice.

Plaintiff-appellant Ralph L. Knotts filed suit under an insurance policy to recover the value of a 1965 Ford XL automobile alleged to be owned by him. The case was tried to a jury and, upon conclusion of appellant's case, the trial court withdrew the case from the jury and entered judgment for appellee dismissing the complaint. Appeal was duly filed.

Appellant's complaint alleged that he was the owner of the automobile in question; that said automobile was insured by appellant against collision loss for its actual cash value and that, due to a collision or upset, the automobile was totally destroyed. Appellee denied that appellant was the owner of the automobile and the trial court ruled there had been no passing of title to appellant, or that appellant was not the owner of the automobile.

Appellant's main point is that the evidence as to ownership was sufficient to require the submission of the case to the jury. Thus, the issue is whether appellant was or was not the owner of the automobile in question.

The record discloses that appellant was a part time salesman for Arthur Arnett, an automobile dealer in Clayton, New Mexico, and the operator of A & Z Motor Company. The arrangement made in about September 1964, was that for any car appellant sold, or for customers he brought to Arnett that Arnett could sell to, appellant would receive a commission of $50. Arnett testified he delivered the car in question to appellant probably in March or April 1965. The arrangement on this car was that appellant was to pay the First National Bank in Clayton $70 per month "until such time as he disposed of the car, or kept it himself and just paid the balance of it off." According to Arnett, if appellant sold the car the profit or loss was all his—"It was his car." Appellant bought the car at Arnett's cost. The cost price of the car was $3495. Arnett further testified he had a floor plan coverage for liability and collision on every car he had; that "if the car was mine, Ralph certainly wouldn't have spent the money to buy the insurance to put on the car, himself;" that if appellant did not sell the car, "he was to pay it off." On cross-examination, Arnett was asked why he left the dealer's plates on appellant's car and he replied: "I have five sets of plates, and if he wanted to use that one plate, why, that would be fine." Arnett also testified that, if appellant did not sell the car by the end of the old model year or beginning of the new model year, he would have "issued him a regular title certificate."

As to the arrangement with Arnett concerning the car in question, appellant testified:

"A. Well, I would buy the car, take it and drive it, and use it as my own car or a demonstrator to sell cars with, however I wanted to use it, and I would drive it just as I would my own car, and I would try to sell other cars, and make a commission, and if I got a chance to sell this car, well, I could sell it for a certain price, and keep the profit, and if I did not sell the car before the other '66 models came out, then I would go ahead and keep it for my own use, or sell it later on, and take the loss myself."

Appellant also testified he paid $3495 for the car and was making payments at the bank; that he kept on paying $70 per month after the automobile was wrecked; that he could not turn the car back to Arnett if he did not sell it; that during the period he owned the car he and his wife drove it on vacation trips to Yellowstone Park, Las Vegas, Nevada, Amarillo, Raton and Colorado Springs, and did "just anything we wanted to do with it." The automobile was used as a family car and was the only car appellant had. The car was wrecked on August 8, 1965.

The record shows that appellant obtained a policy of insurance from appellee on the car in question through the General Insurance Agency in Clayton. The insurance policy received in evidence names appellant as the insured; loss payee the First National Bank, Clayton, New Mexico; shows the policy period from 5–8–65 to 11–8–65; property damage liability of $5000; and under definitions provides:

"'owned automobile' means

(a) a private passenger or utility automobile owned by the named insured and described in this policy for which a specific premium charge indicates that coverage is afforded,"

Mr. Raymond Wallin, vice president and cashier of the First National Bank in Clayton, testified that his bank was handling some of the floor planning of A & Z Motor Company in 1965; that the car here involved was floor planned once; that when it was to be renewed, Arnett told him appellant was going to take the car, use it as a demonstrator and sell it to his father-in-law; that in view of this, Wallin advised Arnett they should put it on some type of demonstrator plan because the car was being driven and should be reduced monthly; that they agreed on the $70 per month reduction and the car was set up on a separate note by itself, renewable on a

three-month basis; that Arnett of A & Z Motor Company executed the note, but appellant made payments on the note and he continued to do so after the car was wrecked. When Wallin was asked if he was looking to Arnett for payments, he replied:

"A. Yes, in a way. Since that time, this has been renewed again in Mr. Knotts' name.

"Q. Changed it to his name?

"A. Yes. But we are still looking to A & Z Motor Company, because they have endorsed the paper."

Wallin also testified that, when he said title was in A & Z Motor Company, he meant the certificate of origin.

On March 7, 1966, the First National Bank in Clayton assigned to appellant all rights under the insurance policy issued to appellant by appellee.

Appellee contends that, as a matter of law, appellant was not the owner of the vehicle and that the trial court correctly withdrew the case from the jury; that the only evidence appellant owned the car is the bald statements of Arnett and appellant, and that title never passed to appellant; that reasonable minds could not differ that appellant was not the owner of the car; and that appellant only had naked possession of the automobile.

In Clovis Finance Company v. Sides, 72 N.M. 17, 380 P.2d 173, after citing §§ 64–3–9(2), 64–4–1, 64–4–3, 64–5–1(a)(b), 64–3–1, N.M.S.A., 1953 Comp., this court said:

"We are clear that our statutes quoted supra are not to be interpreted as providing an exclusive method for transferring title. This conclusion is strongly supported by the provision (§ 64–3–10, N.M.S.A., 1953) that the certificate of title is prima facie evidence of ownership. Such language clearly indicates an intention that the certificate of title is only evidence of ownership and that the same may be shown by other proof. Other states having statutes comparable to ours so construe this provision. * *"

Section 50A–2–401(2), N.M.S.A., 1953 Comp., states in part:

"Unless otherwise explicitly agreed title passes to the buyer at the time and place at which the seller completes his performance with reference to the physical delivery of the goods, despite any reservation of a security interest and even though a document of title is to be delivered at a different time or place; * * *."

Section 50A–2–501(1), N.M.S.A., 1953 Comp., provides in part:

"The buyer obtains a special property and an insurable interest in goods by identification of existing goods as goods to which the contract refers * * *. In the absence of explicit agreement identification occurs

(a) when the contract is made if it is for the sale of goods already existing and identified;"

In Schall v. Mondragon, 74 N.M. 348, 393 P.2d 457, this court, after quoting from Clovis Finance Company v. Sides, supra, stated:

"* * * Since New Mexico does not require an exclusive or mandatory method of transferring title to an automobile, it therefore follows that title and ownership pass when the parties intend it to pass. * * *"

See also, Prince v. National Union Fire Insurance Company, 75 N.M. 313, 404 P.2d 137.

In Everly v. Creech, 139 Cal.App. 2d 651, 294 P.2d 109, the court said:

"An insurance policy, like any other contract, is to be construed so as to give effect to the intention of the parties. * * * Under a contract of sale the property is transferred to the buyer at the time the parties intend it to be transferred, and their intention may be disclosed by their conduct, common usage, and the circumstances of the case. Civil Code, Sec. 1738. The conduct of the parties may well disclose their intention in this regard. * * * The definition of an owner found in Section 66 of the

Vehicle Code does not apply under all circumstances * * *, and one may be considered to be an owner of a car although he has not transferred the title in the manner required by the Vehicle Code. * * * The word, 'dominion' denotes complete ownership or a right to the property. * * * The word ["]ownership["] has different shades of meaning, depending on the context in which it appears and the circumstances in which it is used. * * *

"Under the circumstances here appearing, a finding of full use and the exercise of dominion over this car is equivalent to a finding of ownership within the meaning. of this provision of the policy. We think these findings were sufficient to support the judgment. The court found that Everly acquired possession of the Ford prior to August 25 and that he had possession with full use of it and exercised dominion over it at all times thereafter up to the date of the collision. It was also found that it was not true that he had purchased and acquired this car within thirty days of the accident. A clear intent appears from the findings as a whole to find all the material facts against the plaintiff, and the findings are sufficient for that purpose. * * *"

Appellee notices our holding in Clovis Finance Company v. Sides, supra, and Schall v. Mondragon, supra, but argues that naked possession without documentary evidence of title cannot constitute ownership, citing Bustin v. Craven, 57 N.M. 724, 263 P.2d 392. This is not the situation before us. Under all of the facts which appear in this case, we are here called to determine whether the question of ownership of the automobile involved should have been presented to the jury for its determination.

Under the circumstances present here, we feel that it was for the jury to determine, from all of the evidence, whether or not appellant was the owner of the automobile in question. The trial court was in error in holding that, as a matter of law, appellant was not the owner of the automobile.

In view of our holding, it is not necessary to consider other points raised on this appeal.

The cause is reversed and remanded to the trial court with direction that the judgment heretofore entered be set aside and to proceed in a manner consistent with this opinion.

It is so ordered.

COMPTON, J., and WOOD, J., Court of Appeals, concur.