505 P.2d 56

Barbara FORSYTHE et al., Plaintiffs-Appel-
lees and Cross-Appellants,

v.

CENTRAL MUTUAL INSURANCE COM-
PANY OF NEW YORK, Defendant-
Appellee and Cross-Appellee,

v.

UNITED SERVICES AUTOMOBILE AS-
SOCIATION, Defendant-Appellant
and Cross-Appellee.

No. 9385.

Supreme Court of New Mexico.

Jan. 5, 1973.

Adams & Foley, Quincy D. Adams, Albuquerque, for appellant.

Rodey, Dickason, Sloan, Akin & Robb, Charles B. Larrabee, Albuquerque, for Central Mutual Ins. Co.

Mercer & Carpenter, Albuquerque, for Barbara Forsythe and others.

## OPINION

STEPHENSON, Justice.

This action was brought in Bernalillo County District Court by Barbara and Stanley Forsythe, who are mother and son. Douglas Forsythe, husband of Barbara and father of Stanley, was later added as a plaintiff aligned with Mrs. Forsythe by reason of his being the named insured in the Central Mutual Insurance Company of New York ("Central") policy. The Forsythes are residents of New Jersey.

Mrs. Forsythe alleged that she purchased an Austin-Healy automobile ("the car") on January 16, 1969 and, on the same day, paid for it and arranged for Central to issue liability and collision coverage by endorsement on an existing policy insuring vehicles of the senior Forsythes; that the car was involved in an accident on February 2, 1969, as a result of which it was damaged and towing and storage charges incurred; and that third parties are asserting claims for personal injuries and property damage and Central has denied coverage. A justiciable controversy was alleged and a declaratory judgment sought establishing coverage in Central.

In a second count, Stanley adopted these allegations, alleged that he had liability and collision coverage written by United Services Automobile Association ("United,") and that he had been driving the car at the time of the accident. He alleged that a dispute had arisen as to whether Stanley or Mrs. Forsythe was the owner of the car, and, in the alternative, that United should be determined to have the collision coverage. As to the claims of third parties, Stanley sought a declaratory judgment that United has the liability coverage or that it should be shared by Central and United.

United took the position that Mrs. Forsythe owned the car and that Stanley had no insurable interest in it. Central's position was the reverse of United's. Its Fifth Defense characterized Mrs. Forsythe's purchase of the car as being "ostensible and apparent," said Stanley was the "owner" of it and that Mrs. Forsythe had no insurable interest in it. It alleged that Stanley was a bankrupt and that the purchase by Mrs. Forsythe was an attempt by Stanley and Mrs. Forsythe to keep the car out of the bankruptcy proceedings with the intention that ownership of it would remain in Stanley who would continue in possession and control.

In a cross-claim, Central sought a judicial determination that its policy did not insure or cover the Forsythes for matters arising from the accident and that the policy of United did. Alternatively, a declaration was sought that both companies were jointly obligated.

The case was tried to the court, sitting without a jury, following which findings and conclusions were adopted generally on the theory that Stanley owned the car. Judgment was entered in favor of the Forsythes and against United for the damage to the car and for Central and against the Forsythes on that issue. The judgment further determined that the United policy "affords the (Forsythes) coverage for all claims and suits brought by third parties involved in the accident . . . ."

United and the Forsythes appeal. Of the latter, only Mrs. Forsythe has filed a brief and it is directed only against Central.

From what has been said, it is apparent that the central issue was whether Stanley or his mother owned the car or, more specifically, had an insurable interest in it. Basically, the controversy is between United and Central. Indeed, everyone involved seems to have assumed that, of necessity, one of them had the coverage—a proposition to which we do not necessarily subscribe.

■ The judgment cannot stand in its entirety because United had no contractual relationship with either Mrs. Forsythe or her husband in respect to either physical damage or liability coverage, and neither of the senior Forsythes sought any relief against United. Nothing more is required than to point out the operation of the judgment vis-a-vis the senior Forsythes and United to demonstrate that it must be reversed. We will, without further ado, reverse those portions of the judgment in favor of Douglas and Barbara Forsythe against United and proceed to consider the central issue.

It is undisputed that Stanley purchased the car and that the Bank of New Mexico ("the Bank") had a security interest in it. In the fall of 1968, he was in financial difficulty and was contemplating bankruptcy. In early January, 1969, the Bank repossessed the car for default in the installment payments. Being aware of Stanley's circumstances, it declined to release the vehicle unless the entire balance of the loan was paid, a fortuitous decision in light of subsequent events. Mrs. Forsythe learned of the repossession, presumably from Stanley, and telephoned Mr. Green of the Bank for certain information. On January 14, 1969, Mr. Green advised Mrs. Forsythe, by letter, of the vehicle serial number and the amount still owing to the Bank. On January 16, 1969, Mrs. Forsythe, having borrowed from a New Jersey bank, transmitted the necessary funds to the Bank with instructions, in letter form, to have title to the car placed in her name. She instructed the Bank to deliver the keys to Stanley "who is going to drive the car home to me." On January 22, 1969, Central, at Mrs. Forsythe's instance, issued its policy.

The Bank set about implementing these instructions. Mrs. Forsythe's instructions regarding documentation were not precisely followed because, according to Mr. Green, they did not mesh with New Mexico Department of Motor Vehicle procedures. The Bank had possession of Stanley's title in conjunction with the loan. In late January, Stanley called at the Bank and, to facilitate the transaction, signed something—whether the title or a bill of sale is of small consequence—which enabled the Bank to have title to the car issued in its name, and obtained the keys.

On February 7, 1969, title was issued in the Bank's name and, immediately upon receipt of it, the Bank signed it off in blank and transmitted it to Mrs. Forsythe. The collision had meanwhile occurred on February 2.

Those portions of the documentation which were concluded after the accident appear to be merely the fruition of that which had been arranged and set in motion before.

The trial court found Mrs. Forsythe engaged in the transactions we have recited, but further found that Stanley was the "legal owner" of the car and Mrs. Forsythe was not. It is somewhat difficult to determine how the court reached this result. Every claim or defense of every party other than Central was premised upon Mrs. Forsythe's ownership of the car. Central denied ownership in Mrs. Forsythe and alleged ownership in Stanley and in its Fifth Defense asserted the alleged fraudulent scheme we have recounted.

There was no finding that Mrs. Forsythe knew of or participated with Stanley in any concerted plan or scheme such as Central alleges, nor was there evidence upon which such a finding could have been based, although certain evidentiary trivia

appears concerning Stanley's transactions, activities and statements which might support a finding that he had something of the sort in mind.

We have concluded that the court must have based its finding of ownership in Stanley on the fact that transfer of title had not been completed at the time of the collision, and that therefore he had the "record title." This view is bolstered by the court's further findings that " * * * there was not a bona fide sale or bona fide transfer of ownership from Stanley R. Forsythe to his mother Barbara Forsythe or anyone else, prior to February 2, 1969" and "[a]t the time of the accident record title to the" car was in Stanley.

 Title to the car passed, if at all, when the parties intended that it should. Knotts v. Safeco Insurance Company of America, 78 N.M. 395, 432 P.2d 106 (1967); Prince v. National Union Fire Ins. Co., 75 N.M. 313, 404 P.2d 137 (1965); Schall v. Mondragon, 74 N.M. 348, 393 P. 2d 457 (1964). See also, City of Carlsbad v. Northwestern National Ins. Co., 81 N.M. 56, 463 P.2d 32 (1970). However, the fact that Stanley was the "record" owner of the car at the time of the collision was prima facie evidence of ownership, § 64–3–10, N. M.S.A.1953; Knotts v. Safeco Insurance Company of America, supra; Schall v. Mondragon, supra; Clovis Finance Company v. Sides, 72 N.M. 17, 380 P.2d 173 (1963). We are thereby precluded from overturning the finding of Stanley's ownership of the car as being without support in the evidence.

 An examination of the proceedings below discloses a preoccupation with title. The ultimate issue is not the whereabouts of the legal title but rather which party or parties have insurable interests. The two are not synonymous and the findings are nor harmonious.

 If Stanley had title to the vehicle, and we have declined to overturn the finding that he did, he had an insurable interest. The court in fact found as a fact that:

"On February 2, 1969 Stanley R. Forsythe had an insurable interest in the Austin Healy as owner, because the market value of said vehicle was in excess of the loan balance and because he was in actual possession of said vehicle."

The phrase preceding the comma is more of a conclusion than a finding, and will stand for the reasons we have given, however shaky from an evidentiary standpoint the factual predicate following the comma may be.

 The question remains as to the existence of an insurable interest in Mrs. Forsythe notwithstanding an insurable interest in Stanley. On the subject of whether Mrs. Forsythe had an insurable interest the court made no specific finding. Presumably upon the basis of its decision that Mrs. Forsythe was not the owner of the car, it denied her relief against her insurer —Central. Yet it must have decided that she had an insurable interest in the car, since it gave her judgment against United, Stanley's insurer. A decision that she had an insurable interest would have been in the nature of a conclusion of law rather than a finding of fact. We will proceed upon the basis that the trial court intended to conclude and, in effect, did conclude that Mrs. Forsythe had an insurable interest in the car. Such a conclusion finds ample support in facts found by the court concerning the part played by Mrs. Forsythe in her transactions with the Bank, and there is no occasion to remand for further findings on this score.

A conclusion that Mrs. Forsythe had such an insurable interest also finds support in the law. In Universal C.I.T. Corp. v. Foundation Reserve Insurance Co., 79 N.M. 785, 450 P.2d 194 (1969) we defined an insurable interest as follows:

"We . . . adopted the following definition of 'insurable interest' from Harrison v. Fortlage, 161 U.S. 57, 65, 16 S.Ct. 488, 490, 40 L.Ed. 616, 619 (1896): * * * It is well settled that any person has an insurable interest in property, by the existence of which he will gain

an advantage, or by the destruction of which he will suffer a loss, whether he has or has not any title in, or lien upon, or possession of the property itself. * * * ' "

See also, § 50A–2–501, N.M.S.A. 1953 cited in Knotts v. Safeco Ins. Co. of America, supra, and Maroney v. United States Fidelity and Guaranty Co., 81 N.M. 111, 464 P.2d 401 (1970) which held that a lessee had an insurable interest in improvements made in property subject to the leasehold even though he may not have had title to it.

These authorities establish that one need not hold title to property in order to have an insurable interest.

The fact that Stanley had an insurable interest in the car did not preclude his mother from having one as well. Such a circumstance is not unusual. Examples of such situations are to be found in the relationship of life tenant-remainderman, mortgagor-mortgagee, landlord-tenant and vendor-vendee. 43 Am.Jur.2d Insurance §§ 483, 486, 488. See Crook v. Hartford Fire Ins. Co., 175 S.C. 42, 178 S.E. 254 (1935).

Under the record before us, it would be unrealistic to hold as a matter of law that Mrs. Forsythe was not prejudiced by destruction of the car. We thus agree with the trial court that she had an insurable interest.

A question remains as to whether the judgment was correct as to the insurer against whom Mrs. Forsythe was entitled to assert her claim. As to this, we believe the trial court erred. Her claim was against Central—her insurer—rather than against United.

We have made little mention of Mr. Forsythe. He seems not to have been an active participant in this drama. Neither below nor here have any of his rights been distinguished or segregated from those of Mrs. Forsythe. The court below seems to have considered them as one, and so have we. Further proceedings will be conducted on the same basis.

The judgment is reversed in its entirety. The trial court is directed to enter judgment in favor of United and against the senior Forsythes. The cause is remanded for further proceedings consistent herewith which shall proceed upon the basis that the senior Forsythes had liability and collision coverage and an insurable interest in the car which they may assert against Central and that Stanley had liability and collision coverage and an insurable interest in the car which he may assert against United.

It is so ordered.

OMAN and MARTINEZ, JJ., concur.