Jackie D. **SUGGS** and Debra Suggs, **Plaintiffs/Appellees/Cross–Appellants,**

v.

**STATE FARM FIRE AND CASUALTY COMPANY and State Farm General Insurance Company, Defendants/Appellants/Cross–Appellees.**

Jackie D. **SUGGS** and Debra Suggs, **Plaintiffs/Appellees,**

v.

**STATE FARM FIRE AND CASUALTY COMPANY and State Farm General Insurance Company, Defendants/Appellants.**

Nos. 85–1637, 85–1853 and 85–2238.

United States Court of Appeals, Tenth Circuit.

Nov. 18, 1987.

Rehearing Denied Dec. 18, 1987.

Dick A. Blenden (Jeffrey B. Diamond, with him on the briefs), Paine, Blenden, & Diamond, Carlsbad, N.M., for plaintiffs, Jackie D. and Debra Suggs.

Eric S. Jeffries (Matthew P. Holt and Howard R. Thomas, with him on the briefs), Sager, Curran, Sturges & Tepper, P.C., Albuquerque, N.M., for defendants, State Farm Fire and Cas. Co. and State Farm Gen. Ins. Co.

Before MOORE, McWILLIAMS and STEPHEN H. ANDERSON, Circuit Judges.

STEPHEN H. ANDERSON, Circuit Judge.

Defendants State Farm Fire and Casualty Company and State Farm General Insurance Company (collectively "State Farm") appeal the denial of various post-trial motions following a judgment entered on a jury verdict awarding plaintiffs Jackie and Debra Suggs $176,530.01 in damages arising from State Farm's denial of an insurance claim.[1] The Suggs appeal the judgment entered on the jury verdict finding for State Farm on the Suggs' punitive damages claim. In a separate case consolidated on appeal, State Farm appeals the district court's order awarding the Suggs attorney's fees of $180,631.64. We affirm in part, reverse in part and remand.

## BACKGROUND

This case arises from the destruction by fire, on September 17, 1982, of a mobile home in which the Suggs had been living and which was insured by State Farm. The Suggs had wanted to purchase the home from Jackie Suggs' sister, Cynthia Hennington, but had been unable to obtain financing for the purchase. Accordingly, the Suggs agreed orally with Ms. Hennington to purchase the home and, in June, 1982 they became the co-obligors along with Ms. Hennington on a $13,500.00 note secured by the mobile home, with the understanding that the Suggs would refinance the home in early 1983 and pay Ms.

---

1. Except where the context otherwise indicates, references in this opinion to the Suggs include both Jackie and Debra Suggs.

Hennington $10,000. The Suggs then informed State Farm that they were the new owners of the home and they had their name substituted for Cynthia Hennington's as the named insureds. The insurance policy provided limits of $23,000 for the mobile home, $11,500 for its contents and $6,900 for additional living expenses incurred as a result of damage to or loss of the home. All payments relating to the mobile home, including insurance premiums, for the months of June through September, 1982 when it was destroyed by the fire, were made by Cynthia Hennington or Jackie Suggs' parents.

The fire occurred on September 17, 1982. Jackie Suggs testified at trial that he had been the last person in the mobile home, having left ten to fifteen minutes before the fire. He informed those investigating the fire that he thought he had turned off all electrical appliances in the mobile home before the fire.

The Suggs presented a claim to State Farm for the loss of the mobile home and its contents, as well as for additional living expenses incurred because of the fire. State Farm paid $13,783.37 to the holder of the mortgage on the mobile home. It also paid the Suggs $1,086.62 for living expenses, but has refused to make any further payments.

After receipt of the Suggs' claim, State Farm hired a private investigating firm to investigate the fire. In addition, the State Fire Marshall's office investigated the fire. Both investigators concluded that the fire was intentionally set.[2] On March 9, 1983 the State Fire Marshall concluded that Jackie Suggs had intentionally set fire to the mobile home in order to obtain the

insurance proceeds. Suggs was arrested and charged with arson and insurance fraud. A magistrate thereafter determined that there was probable cause to believe that Suggs was guilty of the charged offenses and bound him over for trial. State Farm denied coverage on March 25, 1983, on the grounds, among others, that the fire had been intentionally set by, or on behalf of, Suggs, that the Suggs did not have an insurable interest in the mobile home, and that the Suggs had made material misrepresentations to State Farm.[3] The determination to bind Suggs over for trial was affirmed by the Eddy County, New Mexico district court on March 28. On August 15, 1983 the Eddy County assistant district attorney entered a "nolle prosequi" in the criminal arson case against Suggs stating that the matter required "further investigation to insure that prosecution is appropriate." R. Vol. I at 355. Meanwhile, in May 1983, the Suggs hired two experts of their own who investigated the fire and concluded that the fire was probably caused by an electrical malfunction.

On September 9, 1983 Jackie and Debra Suggs filed a complaint in state court, subsequently removed to the United States District Court for the District of New Mexico, seeking payment of insurance benefits under their insurance contract with State Farm and alleging that State Farm had denied them benefits in bad faith. They sought the face amount of the policy with interest. They further alleged that State Farm had acted "willfully, with actual malice, wantonly and in bad faith," thereby entitling them to $500,000 in compensatory damages and punitive damages of $20,000,-

---

2. The conclusion that the fire was intentionally set was based upon evidence concerning the heat and rapidity at which the fire burned, the burn patterns of the fire, the points of origin of the fire and the existence of traces of accelerants (charcoal lighter fluid and diesel fuel) in the mobile home.

3. State Farm argues it had substantial evidence that Suggs had both a motive and opportunity to set the fire. Jackie Suggs had lost his job about one month after agreeing to buy the mobile home and Debra Suggs was unemployed. The Suggs had outstanding debts at the time Jackie

Suggs lost his job. While there was some conflicting testimony regarding the Suggs' credit rating, State Farm presented evidence that at the time of the fire, the Suggs' monthly expenses exceeded their monthly income. Evidence of an insured's "unhealthy financial position" is a factor suggestive of motive to commit arson. See *Jamaica Time Petroleum, Inc. v. Federal Ins. Co.*, 366 F.2d 156, 159 (10th Cir.1966), *cert. denied*, 385 U.S. 1024, 87 S.Ct. 753, 17 L.Ed.2d 674 (1967). As to opportunity, as indicated previously, Jackie Suggs admitted he was the last to leave the home before the fire.

000. R. Vol. I at 121–24. State Farm asserted numerous defenses, including arson, misrepresentation of material facts and lack of an insurable interest. In October, 1983 the Suggs presented the information derived from their own investigators to State Farm. State Farm then hired an electrical expert who concluded that the fire was not of electrical origin. At some point after the law suit was filed, the Suggs presented a settlement offer of $200,000, which State Farm declined.

At the conclusion of an eleven-day trial to a jury, the jury concluded that the Suggs were entitled to $26,530.01 for breach of the insurance contract and $150,000 in compensatory damages, based on its determination that State Farm had acted in bad faith. The jury declined to award any punitive damages. The district court denied State Farm's post-trial motions for judgment n.o.v., for a new trial and for a remittitur.

State Farm appeals, alleging that the jury award of $176,530.01 was unsupported by the evidence. It also argues that the district court erred in excluding certain testimony and in denying its motions for dismissal as to the punitive damages claim, for a directed verdict and judgment n.o.v. on the bad faith issue and for a new trial. The Suggs appeal alleging that the district court erred in instructing the jury that it could only award punitive damages if it found, in addition to bad faith, that State Farm acted in a malicious, willful, wanton or reckless manner.[4]

After the appeals in this case were filed, the district court awarded the Suggs $180,631.64 in attorney's fees pursuant to N.M. Stat.Ann. § 39–2–1, which permits an award of reasonable attorney's fees and costs to an insured if a court determines that the insurer acted unreasonably in failing to pay a claim. State Farm appeals that award.

Jurisdiction is based on diversity of citizenship. New Mexico law governs.

## DISCUSSION

### I.

State Farm challenges the sufficiency of the evidence supporting the award of $26,530.01 in contractual and $150,000 in compensatory damages. With regard to the $26,530.01 award for breach of contract, State Farm argues either that the award should be reversed in its entirety because the Suggs lacked any insurable interest in the mobile home and because the Suggs made material misrepresentations to State Farm or that it should be reduced. It thus challenges the denial of its motion for judgment n.o.v. or for a remittitur on the breach of contract claim. State Farm further argues that the trial court erred in refusing to find, as a matter of law, that State Farm had not acted in bad faith in denying the Suggs' claim. It accordingly challenges the denial of its motion for judgment n.o.v. on the $150,000 jury award predicated on a finding of bad faith. Finally, State Farm challenges the denial of its motion for a new trial.

■ "In reviewing the grant or denial of a motion for judgment n.o.v., 'we employ the same standard of review as does the trial court.'" *Trujillo v. Goodman*, 825 F.2d 1453, 1456 (10th Cir.1987) (quoting *Ryder v. City of Topeka*, 814 F.2d 1412, 1418 (10th Cir.1987)). The trial court should only grant a judgment n.o.v. "when the evidence so strongly supports an issue that reasonable minds could not differ." *Ryder*, 814 F.2d at 1418 (quoting *Delano v. Kitch*, 663 F.2d 990, 1002 (10th Cir.1981), *cert. denied*, 456 U.S. 946, 102 S.Ct. 2012, 72 L.Ed.2d 468 (1982)). We must view the evidence and all reasonable inferences to be derived from that evidence in the light most favorable to the party opposing the motion. *Trujillo*, 825 F.2d at 1456; *Ryder*, 814 F.2d at 1418; *Brown v. McGraw–Edison Co.*, 736 F.2d 609, 613 (10th Cir.1984); *Jamaica Time Petroleum, Inc. v. Federal*

---

4. In their docketing statement, the Suggs alleged that the district court erred in denying the introduction of evidence concerning Suggs' criminal prosecution for arson. The Suggs have not ar- gued this issue in their briefs; we therefore need not address it. *See Bledsoe v. Garcia*, 742 F.2d 1237 (10th Cir.1984); *United States v. Gooch*, 603 F.2d 122 (10th Cir.1979).

*Ins. Co.*, 366 F.2d 156, 159 (10th Cir.1966), *cert. denied*, 385 U.S. 1024, 87 S.Ct. 753, 17 L.Ed.2d 674 (1967). The decision of a trial court to grant or deny a motion for a new trial will only be overturned on appeal upon a showing of a "clear abuse of discretion." *Trujillo*, 825 F.2d at 1461; *United States v. Draper*, 762 F.2d 81, 83 (10th Cir.1985); *United States v. Ramsey*, 726 F.2d 601, 604 (10th Cir.1984).[5]

### A. Breach of Contract

In an action by an insured for failure to pay under an insurance contract "damages recoverable under this theory are those damages contemplated by the parties at the time of making the contract." *State Farm General Ins. Co. v. Clifton*, 86 N.M. 757, 527 P.2d 798, 799 (1974). The Suggs sought only the face amount of the policy with interest. We hold that sufficient evidence supports the jury determination that the Suggs had an insurable interest and that they did not make material misrepresentations to State Farm. We conclude, however, that the question of the amount of the damages awarded must be remanded to the district court for a recalculation. Thus, we affirm the district court's denial of State Farm's motion for judgment n.o.v. and for a new trial on the breach of contract claim, but we reverse the denial of State Farm's motion for a remittitur and remand for a recalculation of damages.

### 1. Insurable Interest

■ State Farm argues, without specific supporting authority, that the Suggs lacked an insurable interest in the mobile home because their purchase agreement was unenforceable since it was unwritten and therefore not in compliance with the Uniform Commercial Code provisions governing the transfer of mobile homes. We

disagree. Under New Mexico law, "any person has an insurable interest in property, by the existence of which he will gain an advantage, or by the destruction of which he will suffer a loss, whether he has or has not any title in, or lien upon, or possession of the property itself." *Universal C.I.T. Corp. v. Foundation Reserve Ins. Co.*, 79 N.M. 785, 450 P.2d 194, 195 (1969) (quoting *Harrison v. Fortlage*, 161 U.S. 57, 65, 16 S.Ct. 488, 490, 40 L.Ed. 616 (1896)); *see also Forsythe v. Central Mutual Ins. Co.*, 84 N.M. 461, 505 P.2d 56 (1973); *Maroney v. United States Fidelity and Guaranty Co.*, 81 N.M. 111, 464 P.2d 401 (1970); *Fulwiler v. Traders & General Ins. Co.*, 59 N.M. 366, 285 P.2d 140 (1955); 4 J. Appleman, *Insurance Law and Practice* § 2123 (ed. 1969) ("[A] right of property is not an essential ingredient of insurable interest; any limited or qualified interest, whether legal or equitable, or any expectancy of advantage, is sufficient.").[6] Under that definition, the fact that the Suggs' agreement to purchase the mobile home was oral and arguably unenforceable is not necessarily determinative of the existence of an insurable interest in the home. "The ultimate issue is not the whereabouts of the legal title but rather which party or parties have insurable interests. The two are not synonymous ..." *Forsythe*, 505 P.2d at 59.

In this case, the Suggs had been living in the home for at least six weeks prior to the fire. They were co-obligors on a note secured by the mobile home. Presumably, upon completion of all payments due under the note, or under the planned refinancing arrangement, the mobile home would become theirs. It can hardly be said that they would not suffer a loss upon the de-

---

**5.** While there has been some uncertainty as to whether state or federal law provides the substantive standard for reviewing the grant or denial of a judgment n.o.v. and a new trial in a diversity case, this circuit has stated that federal standards apply. *See Whiteley v. OKC Corp.*, 719 F.2d 1051, 1058 (10th Cir.1983) (Fed.R. Civ.P. 59 governs "granting or denial of a motion for a new trial in diversity actions in federal court. State procedure does not apply."); *Hidalgo Properties, Inc. v. Wachovia Mortgage*

*Co.*, 617 F.2d 196, 198 (10th Cir.1980). Even under New Mexico law, the standard would be essentially the same. *See State Farm Fire and Cas. Co. v. Price*, 101 N.M. 438, 684 P.2d 524 (Ct.App.), *cert. denied*, 101 N.M. 362, 683 P.2d 44 (1984).

**6.** New Mexico has now codified that basic definition. *See* N.M.Stat.Ann. § 59A–18–6 (1984).

struction of the home.[7] Thus, we hold that State Farm cannot avoid payment under the insurance policy on the ground that the Suggs lacked an insurable interest in the mobile home.

### 2. *Material Misrepresentations*

■ The New Mexico courts have stated: As a general proposition, rescission is allowed where there has been a misrepresentation of a material fact, the misrepresentation was made to be relied on, and has in fact been relied on.

*Hendren v. Allstate Ins. Co.,* 100 N.M. 506, 672 P.2d 1137, 1140 (Ct.App.1983) (quoting *Prudential Ins. Co. of America v. Anaya,* 78 N.M. 101, 428 P.2d 640 (1967)). "[A] misstatement is material if it takes away the party's opportunity to estimate his risk under the contract." *Id.* (citing *Prudential Ins. Co.,* 78 N.M. 101, 428 P.2d 640 (1967)); *see also Long v. Ins. Co. of North America,* 670 F.2d 930, 934 (10th Cir.1982) ("a misrepresentation will be considered material if a reasonable insurance company, in determining its course of action, would attach importance to the fact misrepresented.") (citing *Restatement (Second) of Torts* § 538(2)(a) (1977)). In most cases, questions of materiality are appropriately submitted to the jury. *See State Farm Fire & Cas. Co. v. Price,* 101 N.M. 438, 684 P.2d 524 (Ct.App.), *cert. denied,* 101 N.M. 362, 683 P.2d 44 (1984); *see also Ledbetter v. Webb,* 103 N.M. 597, 711 P.2d 874 (1985). Nevertheless, this court has stated that "materiality is a mixed question of law and fact that can be decided as a matter of law if reasonable minds could not differ on the question." *Long,* 670 F.2d at 934.

State Farm argues that the Suggs "made a material misrepresentation when, during their sworn statement, they represented they had entered into a written agreement for the purchase of the trailer before the fire." State Farm's Answer Brief and

7. The cases upon which State Farm relies do not persuade us to the contrary. In *Fulwiler v. Traders & General Ins. Co.,* 59 N.M. 366, 285 P.2d 140 (1955), the New Mexico Supreme Court held that the named insured, the assignee of the purchaser of a car under a conditional sales contract, had an insurable interest in the car, despite the car's previous repossession by the original purchaser, because the assignee had not been released from liability under his purchase contract. We find nowhere in the opinion what State Farm calls "the Supreme Court's acquiescence in the insurer's argument that if the contract was void for want of an acknowledged writing, there was no insurable interest." State Farm's Answer Brief and Brief-in-Chief at 29. Similarly, *Universal C.I.T. Corp. v. Foundation Reserve Ins. Co.,* 79 N.M. 785, 450 P.2d 194 (1969), does not mandate the result State Farm seeks. In that case, Norman Bowman purchased a car for the use of his cousin. Bowman had title to the car placed in his name but arranged with the defendant insurance company to have the cousin named as the insured under a policy of insurance. After the cousin returned the car to Bowman and left the state, the car was damaged while being driven by someone Bowman permitted to use the car. The New Mexico Supreme Court affirmed the lower court's conclusion that the cousin lacked any insurable interest in the car, stating "[w]hen the insured voluntarily abandoned the use of the vehicle, his insurable interest, if any, ceased to exist.... There was no contractual obligation between [the cousin] ... with anyone.

He could not have suffered any loss by its destruction." 450 P.2d at 195–96. Such is not the case here, where the Suggs had not voluntarily abandoned the mobile home, were co-obligors on a note secured by the home, and had orally agreed to purchase the home. *See also Maroney v. United States Fidelity and Guaranty Co.,* 81 N.M. 111, 464 P.2d 401, 803 (1970) (lessee who had borrowed money from bank to build improvements on leased land and had entered into agreement, security agreement and bill of sale with bank concerning the improvements to secure repayment of loan had insurable interest in improvements, despite lack of title thereto); *Jerome v. Great American Ins. Co.,* 52 N.C.App. 573, 279 S.E.2d 42 (Ct.App.1981) (named insured, who had deeded property to wife but who continued to use property as personal residence and remained liable on deeds of trust on property securing promissory notes had insurable interest in property); *Young v. State Farm Fire & Casualty Ins. Co.,* 426 So.2d 636, 640 (Ct.App.La.1982) (person who did not own property but who had been living for several months on property and who was obligated on several notes secured by the property had insurable interest, stating that the "right of occupancy alone gave [plaintiff] ... an insurable interest"); *Deck v. Chatauqua County Patrons' Fire Relief Assoc.,* 73 Misc.2d 1048, 343 N.Y.S.2d 855, 87 (N.Y.Sup.Ct.1973) ("an insurer may not defeat its liability under a policy of fire insurance because of legal inadequacies of an insured's contract to obtain an interest in the property insured.").

Brief-in-Chief at 32.[8] On appeal, State Farm does not seriously argue that the jury finding of no material misrepresentation should be overturned. Rather, it argues that it acted in good faith in denying the Suggs' claim because it had a reasonable basis for believing that a material misrepresentation was made. We disagree. As we have already indicated, the crucial issue in determining State Farm's obligation to pay under its insurance policy with the Suggs is whether and to what extent the Suggs had an insurable interest in the mobile home. Because we hold that, under the facts of this case, sufficient evidence supports the jury finding that the Suggs had such an insurable interest and that State Farm had no reasonable basis for concluding otherwise, we find that State Farm had no reasonable basis for concluding that the Suggs had made a material misrepresentation. We accordingly affirm the denial of State Farm's motion for judgment n.o.v. or for a new trial on that issue.

### 3. *Evidence Supporting Award*

Even if the award of $26,530.01 should not be reversed in its entirety, State Farm argues it should be reduced. State Farm's briefs in this appeal are not consistent on the precise amount by which that award should be reduced. In its Brief-in-Chief, it asserts that the maximum amount established by the evidence is $15,147.52. It reaches this figure by totalling $954.86 for the value due the Suggs for the mobile

home itself, $8,509.28 for the value of lost personal property, and $83.38 for documented unreimbursed living expenses.[9] In its Reply Brief, State Farm appears to concede that the Suggs may be entitled to a maximum of $23,409.28. It reaches this figure by adding the $8,509.28 claimed for lost contents, the $5,600.00 claimed for additional living expenses and $9,300.00 for the value of the trailer ($23,000, the maximum amount permissible under the insurance policy, less $13,700, actually $13,783.37, paid to the holder of the note secured by the mobile home).[10] State Farm thus seeks to reduce the award by $3,120.73.

■ We hold that the district court must recalculate the damage award. Under the insurance policy the maximum amount permissible for loss of the mobile home itself was $23,000. But $13,783.37 was paid to the noteholder and accordingly cannot be awarded to the Suggs. Thus, the maximum amount the Suggs can recover for the home is $9,216.63. Both parties agree that the Suggs incurred additional living expenses of $5,683.38.[11] With regard to lost contents, State Farm asserts that, as the Suggs' Proof of Loss only establishes $8,509.28 payable for lost contents, no greater amount is recoverable, despite the Suggs' suggestion that they sought at trial the maximum policy amount of $11,500. The Suggs do not direct us to any other evidence besides the Proof of Loss establishing the value of their lost contents.

**8.** Apparently, as State Farm later learned, the written agreement was entered into after the fire and pre-dated to indicate it was created before the fire.

**9.** State Farm asserts that the Suggs, because they lacked an insurable interest, had a maximum of $954.86 actually invested in the mobile home. That figure reflects monthly payments on the home made by Suggs' father or sister, assuming Suggs is liable therefore.

The Suggs' evidence of lost personal property consisted of their Proof of Loss listing the value of items lost as $9,509.28, $1,000 of which the Suggs agreed at trial was not claimed. Suggs testified at trial that other lost items of value were not listed on the Proof of Loss, but he presented no details of those items. The Suggs presented receipts totalling $1,170 for room and

board incurred between September 17 and October 31, 1982. Jackie Suggs testified at trial that he spent an additional $5,600 for living expenses after the fire, although he did not explain or document any details of those expenses. The parties stipulated that State Farm paid the Suggs $1,086.62 for living expenses.

**10.** State Farm does, however, maintain its objection to any award for the value of the mobile home on the ground that the Suggs lacked any insurable interest therein.

**11.** State Farm in its Brief-in-Chief suggests that $5,600 of the amount sought for additional living expenses was inadequately documented, but it appears to have conceded that issue in its Reply Brief. We therefore view State Farm as having waived its objection to that amount.

The Proof of Loss is not a part of the record in this appeal. However, the Suggs may not recover more than they have established by sufficient proof. Assuming that the Proof of Loss only establishes the value of the lost contents at $8,509.28, the damages award must be reduced. We accordingly remand for a recalculation.

## B. *Bad Faith*

In their complaint, the Suggs alleged that State Farm acted in bad faith in denying their claim. The essence of State Farm's defense is that it acted reasonably, and therefore not in bad faith. State Farms claims a reasonable basis for believing that the Suggs lacked an insurable interest in the mobile home, that they had made material misrepresentations to State Farm and that the fire was intentionally set by or on behalf of the Suggs.[12] It therefore alleges that the district court erred in denying its motions to dismiss as to punitive damages, for a directed verdict, for judgment n.o.v., and for a new trial on the bad faith issue.

We have already disposed of State Farm's arguments on the insurable interest and material misrepresentation issues. However, we find State Farm's argument that it had a reasonable basis for concluding that Jackie Suggs had intentionally burned the mobile home, and therefore did not refuse payment in bad faith, more persuasive.

Under New Mexico law, "there is an implied covenant of fair dealing which creates an obligation between the parties [to an insurance contract] to act in good faith." *Ambassador Ins. Co. v. St. Paul Fire & Marine Ins. Co.*, 102 N.M. 28, 690 P.2d 1022, 1024 (1984); *see also Torrez v. State Farm Mut. Auto. Ins. Co.*, 705 F.2d 1192, 1195 (10th Cir.1982); *State Farm Fire & Casualty Co. v. Price*, 101 N.M. 438, 684 P.2d 524 (Ct.App.) *cert. denied*, 101 N.M. 362, 683 P.2d 44 (1984); *Chavez v. Chenoweth*, 89 N.M. 423, 553 P.2d 703 (Ct.App.

1976); *Lujan v. Gonzales*, 84 N.M. 229, 501 P.2d 673 (Ct.App.), *cert. denied*, 84 N.M. 219, 501 P.2d 663 (1972). "New Mexico recognizes the tort of bad faith delay or refusal to pay a valid claim by an insured." *Woodmen Accident & Life Ins. Co. v. Bryant*, 784 F.2d 1052, 1056 (10th Cir.1986) (citing *State Farm General Ins. Co. v. Clifton*, 86 N.M. 757, 527 P.2d 798 (1974)). However, as the New Mexico Supreme Court has explicitly stated, "New Mexico does *not* adhere to a single definition of bad faith in the context of insurance matters." *Ambassador Ins. Co.*, 690 P.2d at 1025 (emphasis in original); *see also Lujan*, 501 P.2d at 680; *Price*, 684 P.2d at 532; *Chavez*, 553 P.2d at 709. Thus, bad faith failure to pay an insurance claim has been defined as "a frivolous or unfounded refusal to pay." *Chavez*, 553 P.2d at 709; *see also Woodmen Accident & Life Ins. Co.*, 784 F.2d at 1056; *United Nuclear Corp. v. Allendale Mut. Ins.*, 103 N.M. 480, 709 P.2d 649, 654 (1985); *Clifton*, 527 P.2d at 800; *Aragon v. General Electric Credit Corp.*, 89 N.M. 723, 557 P.2d 572, 575 (Ct.App.), *cert. denied*, 90 N.M. 7, 558 P.2d 619 (1976). It has also been defined as follows:

> By bad faith we mean an absence of good faith by an insurer in its relations with its insured. [citation omitted].
>
> What is good faith? We do not attempt to give a complete definition because of the variety of situations held to involve a question of good faith. [citations omitted]. We use the term "good faith" in this case to mean an insurer cannot be partial to its own interests, but must give its interests and the interests of its insured equal consideration.
>
> .    .    .    .    .
>
> To fulfill the duty of giving equal consideration to the interests of the insured and the insurer there must be a fair balancing of these interests.

12. State Farm concedes on appeal that it has not proved these defenses conclusively. Rather, it simply argues it presented evidence from which the jury could have reasonably concluded that the Suggs lacked an insurable interest, or made material misrepresentations or intentionally set the fire. Thus, no bad faith occurred.

*Lujan v. Gonzales,* 84 N.M. 229, 501 P.2d 673, 680 (Ct.App.), *cert. denied,* 501 P.2d 663, 84 N.M. 219 (1972); *see also Torrez,* 705 F.2d at 1195; *Ambassador Ins. Co.,* 690 P.2d at 1025; *Price,* 684 P.2d at 532. In most cases, the question of good faith is a question of fact for the jury. *See General Motors Acceptance Corp. v. Anaya,* 103 N.M. 72, 703 P.2d 169, 173 (1985).

▇ Neither party cites any New Mexico decision on the question of bad faith in circumstances comparable to this case. Nonetheless, we believe that the only reasonable conclusion that the jury could have reached is that State Farm did not, in this case, act in bad faith. We therefore reverse the denial of State Farm's motion for judgment n.o.v. with respect to the jury award of $150,000.

In this case, State Farm's own investigators, as well as the State Fire Marshall, concluded that, based on the evidence gathered from investigations, the fire was intentionally set. At trial there was substantial conflicting evidence as to the causation of the fire and the propriety of the investigating techniques used by the various experts utilized by both parties. The Suggs do not seriously argue that at least some evidence existed which would suggest that Jackie Suggs had the opportunity and the motive to set the fire. The fact that the criminal arson charges against Suggs were ultimately dropped is immaterial and is not controlling in our review of the jury's verdict in this case. *See Rabon v. Great Southwest Fire Ins. Co.,* 818 F.2d 306, 309 (4th Cir.1987) ("a prosecutor's decision not to prosecute and a jury's decision to acquit in a criminal trial are based on different criteria than apply in a civil proceeding. In particular, a prosecutor's decision to *nolle prosse* may take into account many factors irrelevant in a civil suit, such as the higher standard of proof required for criminal conviction."); *see generally American Home Assurance Co. v. Sunshine Supermarket, Inc.,* 753 F.2d 321 (3d Cir.1985); *Galbraith*

*v. Hartford Fire Ins. Co.,* 464 F.2d 225 (3d Cir.1972).[13] As the New Mexico Supreme Court stated in *Clifton:*

> Given the set of facts before us with the controversy over the entitlement to the proceeds of the policy, an insurance company is justified in taking reasonable time and measures necessary to establish which party is entitled to the proceeds. The Company's actions here were reasonable and proper under the circumstances.

527 P.2d at 800. *See also Ambassador Ins. Co.,* 690 P.2d at 1026–27 ("If the insurer, based on its honest judgment and acting on adequate information after competent investigation of the claim, does not settle and instead proceeds to trial, then it has acted in good faith and cannot be found liable for any excess caused by its failure to settle."). Therefore, although we are aware that judgments n.o.v. should be sparingly and cautiously granted, we hold in this case that it was error not to do so on the issue of bad faith. While reasonable minds could certainly differ on the question of whether State Farm's arson defense was established, reasonable minds could not differ on the question of whether, in this case, State Farm acted in bad faith.

### C. *Punitive Damages*

The Suggs' appeal alleges that the district court erroneously instructed the jury on the burden of proof for assessing punitive damages. The claimed error was in instructing that, after finding bad faith, the jury could only award punitive damages if it further found, by a preponderance of the evidence, that State Farm "acted maliciously, willfully, wantonly or with reckless disregard for Plaintiff's rights." Jury Instr. No. 6, R. Vol. I at 275. The Suggs argue that bad faith alone is sufficient to support an award of punitive damages and seek a new trial with proper instructions on that issue. The Suggs lodged no objection to the tendered instruction at trial.

---

**13.** While the substance of the State Fire Marshall's report and conclusion was presented to the jury, all evidence relating to the criminal arson charges against Suggs was ruled inadmissible. Neither party appeals that evidentiary ruling. Thus, the jury's conclusion that bad faith existed was reached without reference to the criminal arson charges. We accordingly review that jury verdict without reference to those charges.

Because we hold that no bad faith existed, we need not examine the correctness of the jury instruction on punitive damages, nor the question of whether it was proper, in the circumstances of this case, to submit the punitive damages claim to the jury. The Suggs concede that, absent a finding of at least bad faith, no punitive damages are permissible. *See Woodmen Accident & Life Ins. Co. v. Bryant*, 784 F.2d 1052, 1057 (10th Cir.1986) ("because Woodmen [the insurance company] did not deny ... [the insured's] claim in bad faith, ... [the insured's] claim for punitive damages fails."); *United Nuclear Corp. v. Allendale Mut. Ins. Co.*, 103 N.M. 480, 709 P.2d 649, 654 (1985) ("To assess punitive damages for breach of an insurance policy there must be evidence of bad faith or malice in the insurer's refusal to pay the claim.").

### D. *Evidence Regarding Polygraph Examination*

■ In preparation for his defense of the criminal arson charges brought against him, Suggs retained Mr. Melvin Miller, a private investigator and polygraph expert, to conduct a polygraph examination of Suggs. In the course of a standard pre-polygraph examination interview concerning the questions to be asked during the polygraph test, Suggs refused to answer certain questions concerning the fire.[14] The district court granted Suggs' pre-trial motion to exclude any reference to the polygraph examination or statements made to Miller during the pre-examination interview and the polygraph examination itself, on the ground that the examination failed to comply with the requirements stipulated by the New Mexico Supreme Court for the admission of such evidence. State Farm argues such exclusion was error, because it was not attempting to introduce the results of the polygraph or to establish that Suggs had failed to prove his innocence.[15] Rather, State Farm argues "the evidence was sought to be introduced for the sole purpose of showing that Jackie Suggs had refused to answer highly relevant questions posited by his own expert." State Farm's Answer Brief and Brief-in-Chief at 23. This, State Farm argues, is probative and relevant to the question of whether Suggs intentionally burned the home. In addition, State Farm claims the statement to Miller regarding the possibility that

---

14. The relevant interchange was as follows:

Q Jackie, did you deliberately cause this fire?
A Nope.
Q You didn't set it?
A Nope.
Q You didn't put any diesel fuel in there or charcoal lighter or anything to cause the fire?
A No.
Q Fully admit that this fuel was all around the place?
A Yes.
Q And underneath? Things of this nature, but you did not scatter any type of propellant whatsoever as far as the trailer?
A Nope.
Q You did not burn or cause it to burn?
A Nope.
....
Q Okay. Regarding your trailer house fire September the 17th, did you set it on fire?
A This question is not supposed to be asked.
Q What do you mean?
A Well, me and Jeff [Suggs' attorney] talked about it the other day. And I told Jeff I wouldn't answer that question because that's not what's on trial here.
Q I though you was charged with burning your trailer?

A No. That's, that's—the only thing they're going off on is all this God damn diesel and stuff in my trailer house and I told Jeff the other day and I'd—like I told him, I said, I told them right off start that I was scared, I left the God damn cooker on—
....
Q ... In that regard, then the way that you're looking at it, is for whether you put diesel fuel in the trailer?
A That's right.
Q Or any type of propellants?
A That's right.
Q In the trailer or even under it for a purpose to burn it?
A That's right. I told Jeff the other day, that I didn't want that one asked because I've got a lot of doubt in my mind that I caused it.
....
Q ... Regarding your trailer house on Standpipe Road, did you distribute any type of petroleum product inside it?
A Okay.
Q How does that sound?
A Just great.
Defendant's Ex. E at 30, 32–34, 36.

15. According to Miller, the results of the polygraph were "inconclusive." R.Supp. Vol. I at 43.

Suggs had left a hot plate on is relevant to the issues of Suggs' credibility, since he argued at trial that evidence supported the theory that an electrical malfunction started the fire, and to his good faith in his dealings with State Farm, since Suggs never mentioned this possibility to State Farm. State Farm seeks a new trial to permit evidence of Suggs' refusal to answer those questions.

Decisions of a trial court to admit or exclude evidence are within the sound discretion of that court, and, absent an abuse of discretion, will not be overturned on appeal. *See United States v. Wright*, 826 F.2d 938, 945 (10th Cir.1987); *Whiteley v. OKC Corp.*, 719 F.2d 1051, 1057 (10th Cir. 1983). We find no abuse of discretion here.

We agree with State Farm's assertion that it was not trying to introduce the results of the polygraph test, only the fact that Suggs refused to answer certain questions in the pre-test interview. Thus, the compliance or non-compliance of the polygraph examination with the procedures governing such examinations is immaterial. But, viewing this contested item of evidence in the context of the entire trial, we find no abuse of discretion in the decision not to admit it. The questions Suggs refused to answer related to whether he caused the fire. Because he evidently viewed those questions as including accidental causation of the fire he refused to answer. He did, however, answer other questions regarding whether he deliberately caused the fire and whether he intentionally distributed flammable products around the home, the method of arson allegedly used in this fire. Thus, viewed in context, we do not find his refusal to answer the particular questions so probative of any issue involved here as to outweigh any prejudice which may have resulted from the admission of that testimony.[16] Nor do we see any abuse of discretion in the exclu-

sion of the contested evidence despite State Farm's additional claims of its relevance to Suggs' credibility and good faith.

### E. *Attorneys' Fees*

■ State Farm appeals the district court's award of $180,631.64 in attorneys' fees pursuant to N.M.Stat.Ann. § 39–2–1 (1978) which provides that "where an insured prevails against an insurer who has not paid a claim on any type of first party coverage, the insured person may be awarded reasonable attorney's fees and costs of the action upon a finding by the court that the insurer acted unreasonably in failing to pay the claim." The New Mexico courts "have not had occasion to discuss this statute [N.M.Stat.Ann. § 39–2–1]" and we therefore have no definitive guidelines for determining what conduct is "unreasonable." *United Nuclear Corp. v. Allendale Mut. Ins.*, 709 P.2d at 644 (Bivins, J., concurring in part; specially concurring in part). Nonetheless, section 39–2–1 has been described as "punitive" and thus "must be strictly construed and applied with caution." *Id.* at 664–65. Both parties essentially concede that the attorneys' fees issue rises or falls with the disposition of the rest of this appeal, as the award of attorneys' fees is only proper if State Farm acted "unreasonably." Because we have concluded that State Farm's denial of the claim was not in bad faith, but was instead based upon evidence accumulated after a reasonable investigation, we hold that its denial of the Suggs' claim was not unreasonable. We therefore reverse the award of attorneys' fees.[17]

### CONCLUSION

The decision of the district court denying State Farm's motions for judgment n.o.v. and for a new trial is AFFIRMED with respect to the breach of contract claim. The decision of the district court denying

---

16. In addition, State Farm had ample opportunity at trial to question Suggs on the causation of the fire and to ask the questions Suggs refused to answer in the polygraph examination.

17. In so holding, we note that the Suggs have prevailed on their breach of contract claim and

are entitled to benefits under the insurance policy. Nonetheless, State Farm's refusal to pay based on its claim that Suggs had himself burned or cause the burning of the mobile home was not unreasonable, even if it ultimately was not persuasive before the jury.

State Farm's motion for remittitur is RE-VERSED and the case is REMANDED for a recalculation of damages under the breach of contract claim. The district court decision is REVERSED with respect to the award of $150,000 in compensatory damages and $180,631.64 in attorneys' fees to the Suggs.